**No. 79SA47**

**Colorado Land Use Commission v. The Board of County Commissioners of the County of Larimer, and in their official capacity, William Lopez, Chairman, David Weitzel, and Nona Thayer, the individual members of said Board, and The City of Fort Collins, The City of Loveland, The City of Longmont, The Town of Estes Park, and The Platte River Power Authority, a political corporation and a political subdivision of the State of Colorado**

(604 P.2d 32)

Decided December 17, 1979.

8

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Marcia M. Hughes, Assistant Attorney General, James L. Kurtz-Phelan, Assistant, for appellant.

Harden, Napheys, Schmidt, & Hass, P.C., George H. Hass, for Board of County Commissioners and members.

Arthur E. March, Jr., for City of Fort Collins.

Lynn A. Hammond & Roger Clark, Randy Williams, for City of Loveland.

Ralph Josephson, for City of Longmont.

Babcock and White, P.C., Gregory A. White, for Town of Estes Park.

Moses, Wittemyer, Harrison & Woodruff, P.C., John Wittemyer, Bryan W. Blakely, for Platte River Power Authority.

Thomas O. David, for amicus curiae Board of County Commissioners of Weld County.

Richard P. Doucette, for amicus curiae Board of County Commissioners of Grand County.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

The appellant, the Colorado Land Use Commission (Commission), initiated an action in the trial court to review the decision of the Board of County Commissioners of Larimer County (County) denying the Commission's formal request to designate a proposed electric generating plant as a matter of state concern in accordance with section 24-65.1-407(1)(c), C.R.S. 1973 (1978 Supp.). This statute, which is a provision of Part 4 of the Colorado Land Use Act, allows the Commission to seek judicial review *de novo* of a local government's actions under sections 24-65.1-401 *et seq.*, C.R.S. 1973 (1978 Supp.). Part 4 delegates to local governments the function of designating areas or activities as matters of state interest subject to certain guidelines. The trial court declared, *inter alia,* that judicial review *de novo* was unconstitutional as a violation of the separation of powers principle enunciated in *Colo. Const.* Art. III and therefore dismissed the complaint. We affirm the dismissal; however, we hold the statute to be constitutional.

The present controversy centers upon the Rawhide Energy Project (Project), an electrical generating plant and waste disposal facility. The municipalities of Fort Collins, Loveland, Longmont, and Estes Park organized the Platte River Power Authority (Authority) to plan and construct the facility. The chosen site is located within the territorial limits of Larimer County. On August 25, 1977, the Authority entered into an intergovernmental agreement, whereby the Authority would seek rezoning, provide a report on the environmental impact, and agree to abide by Larimer County's zoning and reasonable land use regulations. In return, the County agreed to base its approval of the application upon standards set forth within the agreement.

On August 26, 1977, the Commission, pursuant to section 24-65.1-407(1)(a), C.R.S. 1973 (1978 Supp.), filed a formal request with the County to take action for consideration of the Project as a matter of state interest. The County complied with the Commission's request and held a public hearing in accordance with section 24-65.1-404, C.R.S. 1973 (1978 Supp.). The County decided not to designate the Project as a matter of state interest.

The Commission filed a complaint against the County in the trial court seeking a determination that the project involved a matter of state interest and an order requiring the County to so designate and adopt statutory guidelines and regulations. Upon the County's motion, the court joined the municipalities and the Authority as necessary parties. The Commission filed an amended complaint seeking a declaration that the intergovernmental agreement was illegal and void. The trial court dismissed the complaint declaring the statutory provision permitting judicial review by trial *de novo* to be in violation of the separation of powers principle as described in *Colo. Const.* Art. III. The trial court also ruled that the attempt by the Commission to force a designation upon the County was prohibited by *Colo. Const.* Art. V, Sec. 35, which bars interference by "special" commissions with municipal improvements and functions. Finally, the trial court held the intergovernmental agreement to be valid and enforceable. The Commission challenges each of these rulings in this court.

■ There are three premises which underlie a determination of a challenge to the constitutionality of a statute.
"First, statutory interpretation must be governed by legislative intent; second, if a statute is susceptible of both constitutional and unconstitutional interpretations, the court will construe it to avoid constitutional infirmities; third, statutory provisions *in pari materia* must be construed together."
*Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979). When these three tenets are applied to section 24-65.1-407(1)(c), C.R.S. 1973 (1978 Supp.), we find that it can be constitutionally upheld. However, since this construction is consistent with

12

the trial court's judgment dismissing the Commission's complaint, we find it unnecessary to reverse the judgment.

The purpose of the Colorado Land Use Act dealing with areas and activities of state interest, sections 24-65.1-101 *et seq.*, C.R.S. 1973 (1978 Supp.), is to allow both state and local government to supervise land use which may have an impact on the people of this state beyond the immediate scope of the project. Although the General Assembly reserved the right to describe such areas and establish criteria for their development, it also delegated its power to local government to so designate and promulgate guidelines with the assistance of the Commission. Section 24-65.1-101(2), C.R.S. 1973 (1978 Supp.).

There is nothing in the article which would indicate that local governments have any duty to declare such projects or areas to be a matter of state interest. In fact, the General Assembly has declared that "[l]ocal governments shall be *encouraged* to designate areas and activities of state interest." Section 24-65.1-101(2)(b), C.R.S. 1973 (1978 Supp.) (Emphasis added). The General Assembly also provided that "nothing in this article shall be construed as enhancing or diminishing the power and authority of municipalities [or] counties . . . ." Section 24-65.1-105(1), C.R.S. 1973 (1978 Supp.). With such language it is difficult for this court to accept the Commission's position that local governments are *mandated* to make designations upon the Commission's request.

We now consider the impact of Part 4 (sections 24-65.1-401 *et seq.*) of this article, which has given rise to this litigation. On its face it might appear that under certain circumstances, the General Assembly was mandating a designation by local governments. However, when read *in pari materia* with the above-quoted sections of the Act, this was clearly not the intent of the General Assembly. *Cf. City of Littleton v. Wagenblast,* 139 Colo. 346, 338 P.2d 1025 (1959) (Judicial review of annexation proceedings conducted by local governments).

The designation process, as recognized by both parties during oral argument before this court, is a quasi-legislative function. *Cf. Board of County Commissioners v. City and County of Denver,* 37 Colo. App. 395, 548 P.2d 922 (1976) (Annexation proceedings). To place the ultimate determination in the courts through judicial review of this legislative action would violate the constitutional principle of the separation of powers. *Tihanovich v. Williams,* 196 Colo. 144, 582 P.2d 1051 (1978); *Frankel v. City and County of Denver,* 147 Colo. 373, 363 P.2d 1063 (1961).

Nevertheless, a court may, when given the authority by the General Assembly, review a legislative determination to ensure that statutory procedures have been followed, *City of Englewood v. Daily,* 158 Colo. 356, 407 P.2d 325 (1965), or to ensure that the legislative body has not abused its discretion.

"We hold that in reviewing the budgeting and taxing actions of a board of county commissioners, which are clearly legislative, a trial court should give great deference to the board's discretionary acts, and should apply an abuse of discretion standard."
*Tihanovich, supra.*

■ This limitation upon the scope of judicial review of legislative activities is completely consistent with the language of section 407(1)(c). The General Assembly provided a procedure whereby the Commission can seek to enforce compliance by a local government with that body's statutory *duty to consider designation* following a formal request by the Commission. The role of the courts is not to pass upon the substantive merits of the local government's determination, but rather to ensure that the statutory scheme has been appropriately carried out.

What then is the purpose of a "trial *de novo*" as mentioned in section 24-65.1-407(1)(c)? Although this court has been called upon to define this term in the context of judicial review of both judicial and quasi-judicial proceedings, we have yet to address its meaning when used in providing for judicial review of legislative or quasi-legislative proceedings. We therefore turn to other jurisdictions for guidance on this issue.

The Supreme Court of Iowa has interpreted *de novo* review in the legislative context. Interpreting a similar provision for judicial review of municipal zoning decisions in the Iowa Statutes, that court held:
"The term 'de novo' as used in either section does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality . . . ."
*Trailer City, Inc. v. Board of Adjustment,* 218 N.W.2d 645, 647 (Iowa 1974). On an earlier occasion that court defined illegality as
"[a]rbitrary and unreasonable actions, or proceedings not authorized by, or contrary to the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to, or unsupported by facts on which the power to act depends, or within which the power must be exercised."
*Anderson v. Jester,* 206 Iowa 452, 463, 221 N.W. 354, 359 (1928).
*Accord Weldon v. Zoning Board,* 250 N.W.2d 396 (Iowa 1977). This rationale is sound and necessarily leads to a logical interpretation of legislative intent.

■ We hold that review *de novo* under section 24-65.1-407(1)(c) does not take on the meaning applied in review of judicial or quasi-judicial proceedings: trial anew on the merits, *People v. Williams,* 172 Colo. 434, 473 P.2d 982 (1970). Rather, it constitutes a review of questions of illegality or impropriety on the part of local government. The *de novo* term is included to indicate that any relevant evidence may be introduced to at-

14

tempt to prove illegality such as fraud, sham, bribery, failure to comply with statutory requirements, or abuse of legislative discretion.[1]

■ Since the Commission here sought a *de novo* determination of the *merits* of the County's determination regarding the designation, the trial court properly entered a judgment dismissing the complaint. The trial court's sole function was to review the legality and propriety of the County's proceedings, and since there was no allegation in the complaint by the Commission to this effect, there was nothing for the trial court to review. Its judgment dismissing the complaint must therefore be affirmed.

■ The remaining issues can be briefly addressed. As to the alleged violation of Article V, section 35 of the Constitution of the State of Colorado, our interpretation of Part 4 of the Act is dispositive. The fact that the review process is limited to issues of legality exclusively, municipal functions are in no way impaired. Thus, the Colorado Land Use Commission cannot "interfere" with the lawful exercise of the powers of a municipality, and the statutory provisions at issue are constitutional.

■ As to the validity of the intergovernmental agreement, it is obvious from a careful reading of that agreement that the County has surrendered none of its zoning authority. Rather, it has merely agreed to the standards which will apply in passing on whether to issue a permit for the Project. This is reasonable in light of the great expense in preparing for a project of this magnitude.

Judgment affirmed; however, we hold that the trial court's declaration of unconstitutionality of statutes at issue is disapproved.

---

[1] Since the Act provides no mechanism for the preservation of a record during the local government proceedings, any evidence previously introduced, which is relevant to the issue in the district court, may again be presented. *Cf.* Section 31-12-116(5), C.R.S. 1973 (1978 Repl. Vol. 12) (Judicial review *de novo* of annexation proceedings by local governments).