The **COLORADO GROUND WATER COMMISSION; and Marks Butte, Frenchman, Sandhills, and Central Yuma County Ground Water Management Districts; and Upper Black Squirrel Creek Ground Water Management District, Petitioners,**

v.

**EAGLE PEAK FARMS, LTD., a Colorado Limited Partnership, Respondent.**

No. 93SC637.

Supreme Court of Colorado, En Banc.

June 24, 1996.

Gale A. Norton, Attorney General, Stephen E. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Jennifer L. Gimbel, Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Edward R. Kowalski, Patrick E. Kowaleski, Assistant Attorneys General, Natural Resources Section, Denver, for Petitioner Colorado Ground Water Commission.

Petrock & Fendel, P.C., James J. Petrock, Frederick A. Fendel, III, Denver, for Petitioner Upper Black Squirrel Creek Ground Water Management District.

No appearance on behalf of Petitioners Marks Butte, Frenchman, Sandhills, and Central Yuma County Ground Water Management Districts.

Timothy R. Buchanan, P.C., Timothy R. Buchanan, Boulder, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in *Eagle Peak Farms, Ltd. v. Colorado Ground Water Commission,* 870 P.2d 539 (Colo.App.1993),[1] to determine whether the court of appeals erred in holding that *de novo* review of a rule promulgated by petitioner, the Ground Water Commission (Commission), is to occur before a ground water judge and, if so, whether such review violates the separation of powers doctrine. Respondent Eagle Peak Farms, Ltd., a limited partnership (Eagle Peak), timely filed for appeal of a Commission rule before the designated ground water judge, in the Adams County District Court, under the Ground Water Management Act (the Act), section 37–90–115, 15 C.R.S. (1990), and also, by way of protective filing within the prescribed time limit, under the state Administrative Procedure Act (APA), section 24–4–106, 10A C.R.S. (1988), for judicial review in the Denver District Court.

Eagle Peak argues that the rule is reviewable *de novo* under the Act by the ground water judge in Adams County as the court of appeals held. The Commission contends that the appeal filed in the Adams County District Court must be dismissed in favor of the alternative on-the-record judicial review petition filed in the Denver District Court. We agree with the Commission, and reverse with directions for dismissal of the appeal pending before the ground water judge.

I.

In March of 1992, the Commission promulgated a rule which prohibits the relocation of any well in a designated ground water basin to a situs more than one-half mile from its original permitted location. Eagle Peak, an entity which owns farm land and water rights in the Lost Creek Designated Ground Water Basin in Adams and Weld Counties, appeared before the Commission during the rulemaking proceedings to contest the proposed rule and then filed for judicial review upon the rule's adoption.

The ground water judge in Adams County dismissed the appeal for *de novo* review filed

---

1. The issues for which we granted certiorari were stated as follows: whether the court of appeals erred in holding that agency rulemaking, a quasi-legislative function, allows a *de novo* standard of review pursuant to the Ground Water Management Act, § 37–90–115, 15 C.R.S. (1990), on the basis that the state APA, § 24–4–106, 10A C.R.S. (1988), does not apply to judicial review of the rulemaking actions of the state Ground Water Commission, and whether such *de novo* review violates the separation of powers doctrine.

in his court, ruling instead that Denver District Court on-the-record review under the APA is applicable. The court of appeals reversed, basing its decision on the provisions of sections 37–90–115(1), (4), 15 C.R.S. (1990), of the Act, amended in 1983, as these provisions existed when the rule was adopted:

> (1) Any party, including a ground water management district, *adversely affected or aggrieved by any decision or act of the ground water commission* under the provisions of this article or by a decision or act of the state engineer under section 37–90–110 *may take an appeal to the district court in the county wherein the water rights or wells involved are situated.*
>
> \*   \*   \*   \*   \*   \*
>
> (4) *Proceedings upon appeal shall be de novo;* except that evidence taken in any administrative proceeding appealed from may be considered as original evidence, subject to legal objection, as if said evidence were originally offered in such district court.

Ch. 409, sec. 2, § 37–90–115, 1983 Colo. Sess. Laws 1416, 1416–17 (emphasis added).

We are asked to construe whether the language "decision or act" relating to an "appeal," under the 1983 amendment to section 37–90–115(1) which was in effect when the rule was adopted, was intended to include rulemaking.[2] If so, *de novo* review in the Adams County District Court would be permissible. If not, on-the-record APA review in the Denver County District Court would prevail.

**2.** In 1994, the General Assembly specifically revised § 37–90–115 to provide that Commission rules are subject to APA § 24–4–106 review:

> (1)(a) Any party, including a ground water management district, *adversely affected or aggrieved by any decision or act of the ground water commission, except for the adoption of rules,* under the provisions of this article or by a decision or act of the state engineer under section 37–90–110 may take an appeal to the district court in the county wherein the water rights or wells involved are situated.
>
> . . . .
>
> (2) Any party adversely affected or aggrieved by a rule adopted by the ground water commission may take an appeal pursuant to section 24–4–106, C.R.S.

II.

### A. The Ground Water Management Act

The Act regulates the appropriation and administration of designated ground water.[3] *See generally North Kiowa–Bijou Management Dist. v. Ground Water Comm'n,* 180 Colo. 313, 505 P.2d 377 (1973). Designated ground water is subject to the prior appropriation doctrine in a modified manner. § 37–90–102(1), 15 C.R.S. (1990). In *Jaeger v. Colorado Ground Water Comm'n,* 746 P.2d 515 (Colo.1987), we said that the modified doctrine under the Act was intended to "accommodate the important differences between surface water and designated ground water." *Id.* at 520 (citing *Danielson v. Kerbs Ag., Inc.,* 646 P.2d 363, 370 (1982)). In *Jaeger* we acknowledged the "need for different policies to protect designated ground water since underground aquifers containing designated ground water are 'not subject to the same ready recharge enjoyed by surface streams and tributary ground water.'" *Id.* (quoting *Kerbs,* 646 P.2d at 370).

The Act creates a permitting system for the allocation and use of ground waters within designated ground water basins. The Commission is empowered to act on conditional and final well permit applications, changes of water rights to designated ground water, sections 37–90–107, –108, 15 C.R.S. (1990), and to "supervise and control the exercise and administration of all rights acquired to the use of designated ground water." § 37–90—111(1)(a), 15 C.R.S. (1990). Upon notice and hearing, the Commission

§§ 37–90–115(1)(a), (2), 15 C.R.S. (1995 Supp.) (emphasis added).

**3.** Section 37–90–103(6)(a), 15 C.R.S. (1990) provides in pertinent part:

> "Designated ground water" means that ground water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin.

has authority to establish the boundaries of designated ground water basins and subdivisions thereof based on geographic description. § 37–90–106(1)(a), 15 C.R.S. (1990). The State Engineer serves as a non-voting member of the Commission and may be delegated to perform any function of the Commission except the designation of basins and districts and the fixing of water rights priorities. § 37–90–104(6), 15 C.R.S. (1990).

The Act provides that ground water management districts can be created once a basin is designated, if the taxpaying electors in a designated basin so choose. §§ 37–90–118 to –120, 15 C.R.S. (1990). Administration and enforcement functions are placed with the Ground Water Commission, section 37–90–111, 15 C.R.S. (1990); the State Engineer, section 37–90–110, 15 C.R.S. (1990); and locally-formed ground water management districts, sections 37–90–122 to –134, 15 C.R.S. (1990). Management districts have the power to assist in the enforcement of Commission rules and may adopt their own rules subject to the Commission's review. §§ 37–90–130, –131, 15 C.R.S. (1990).

### B. *The APA*

Pursuant to section 24–4–107, 10A C.R.S. (1988), the APA applies to every agency of the state having statewide territorial jurisdiction unless a specific provision of the agency's statute or other specific statutory provision is preemptive. The procedural requirements for agency rulemaking are set forth in section 24–4–103, 10A C.R.S. (1988); those for licensing and adjudicatory hearings are set forth in sections 24–4–104, –105, 10A C.R.S. (1988).

█ APA section 106 controls judicial review of agency action, including rulemaking and adjudication. Section 24–4–106(4) states that the residence of any state agency for purposes of judicial review of agency action shall be the City and County of Denver. APA review of agency action, whether quasi-legislative or quasi-judicial, is based upon the agency record. *Citizens for Free Enterprise v. Department of Revenue*, 649 P.2d 1054, 1064 (Colo.1982). Section 24–4–106(7) provides that, "[i]n making the ... determinations, the court shall review the whole record

or such portions thereof as may be cited by any party."

### C. *Quasi-Legislative Action*

In Colorado, the General Assembly has chosen to vest part-time citizen bodies, like this Commission, with rulemaking authority. Under section 37–90–104, 15 C.R.S. (1990), the Commission consists of twelve members, nine of whom are appointed by the governor and confirmed by the senate. Six of the appointed members must be resident agriculturists of designated ground water basins, two shall represent municipal or industrial water users of the state, and one shall be from an area west of the Continental Divide. § 37–90–104(3)(b). The non-appointed members consist of the executive directors of the Department of Natural Resources (voting member), the State Engineer and the director of the Colorado Water Conservation Board (non-voting members). § 37–90–104(4).

█ Agency "[r]ule-making conducted in accordance with section 24–4–103 is quasi-legislative, not quasi-judicial, in character." *Collopy v. Wildlife Comm'n*, 625 P.2d 994, 1003 (Colo.1981). We recognize that agency determinations vary in range and in nature and that the scope of judicial review must be appropriately tailored depending upon whether the determination is predominantly policy-oriented or factual in nature. *Citizens for Free Enterprise*, 649 P.2d at 1064. For example, rules may reflect policy judgments of a generic character, "with factual determinations playing a tangential role." *Id.* For such rules, "specific factual support for the regulation should not be required, although the reasoning process that leads to its adoption must be defensible." *Id.* On the other extreme, the necessity for the rule may turn on a discrete fact that is capable of demonstrative proof. In that situation, "the reasonableness of agency action will depend upon the presence of factual support for its determination." *Id.* More often, however, agency determinations are based upon a combination of policy considerations and factual determinations. *Id.* In these actions, the nature and scope of judicial review will depend upon which type of determination predominates. *Id.*

■ Rulemaking does not involve the application of the policy to any specific person. *City of Aurora v. Public Utils. Comm'n,* 785 P.2d 1280, 1286–87 (Colo.1990). "Rulemaking is the 'issuance of regulations or the making of determinations which are addressed to indicated but unnamed or unspecified persons or situations.'" 2 Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 6.1 at 228 (3d ed.1994) (quoting Fuchs, *Procedure in Administrative Rulemaking,* 52 Harv. L.Rev., 259, 265 (1938)).

■ When courts review rules, the administrative record provides the basis for relating the rule to the applicable law, in the process of ascertaining whether the agency has complied with the required legal standards. In *Citizens for Free Enterprise,* 649 P.2d at 1062, we articulated that "based on the record" review, pursuant to section 24–4–106, provides a "concrete body of material for assessing the basis of the administrative agency's conclusions." We stated that "[r]ather than engaging in a de novo inquiry into whether the basis and purpose of the rule have some foundation in fact, the court is directed to the administratively compiled record." *Id.* We concluded that the standard of review in the consideration of agency rulemaking is "reasonableness." *Id.* at 1061–65.

■ Rules adopted by an agency are presumed to be valid. *Regular Route Common Carrier Conference v. Public Utils. Comm'n,* 761 P.2d 737, 743 (Colo.1988). Any challenging party has a heavy burden to establish invalidity of the rule by demonstrating that the agency violated constitutional or statutory law, exceeded its authority, or lacked a basis in the record for the rule. *Id.* The court cannot substitute its judgment for that of the agency. *Citizens for Free Enterprise,* 649 P.2d at 1065.

■ In contrast, quasi-judicial action involves "determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Cherry Hills Resort Dev. Co. v. Cherry Hills Village,* 757 P.2d 622, 625 (Colo.1988). "What distinguishes legislation from adjudication is that the former affects the rights of individuals in the abstract and must be applied in a further proceeding before the legal position of any particular individual will be definitively touched by it; while adjudication operates concretely upon individuals in their individual capacity." 2 Davis & Pierce, Administrative Law Treatise § 6.1 at 228 (quoting J. Dickinson, Administrative Justice and the Supremacy of Law 2 (1927)).

■ In cases where we have interpreted statutory provisions for "*de novo*" review of legislative proceedings, we have concluded that such review does not take the traditional form of a new trial on the merits. *See, e.g., Colorado Land Use Comm'n v. Board of County Comm'rs,* 199 Colo. 7, 13–14, 604 P.2d 32, 35–36 (1979); *City & County of Denver v. Board of County Comm'rs,* 782 P.2d 753, 759 (Colo.1989). Rather, such review focuses on allegations of agency illegality or impropriety: "The *de novo* term is included to indicate that any relevant evidence may be introduced to attempt to prove illegality such as fraud, sham, bribery, failure to comply with statutory requirements, or abuse of legislative discretion." *Colorado Land Use Comm'n,* 199 Colo. at 13–14, 604 P.2d at 36.

■ In this case, we determine that the General Assembly did not intend to subject Commission rulemaking to *de novo* review of any type.

### III.

Eagle Peak seeks to challenge a portion of Commission Rule 7 ("Change of Rights to Designated Ground Water"), which provides in pertinent part that a "request to change the location of any well in excess of 1/2 mile from the original permitted site shall be denied." Rule 7.3.4, 2 C.C.R. 410–1 (1992). The rule was promulgated pursuant to sections 37–90–107, –108, –111, 15 C.R.S. (1990) of the Act. This rule applies to each of the eight designated groundwater basins and thirteen management districts.

Pursuant to section 37–90–115(1)(b)(V), 15 C.R.S. (1995 Supp.), the Chief Justice has appointed four ground water judges. Adopting Eagle Peak's view of this case would mean that any Commission rule could be challenged in four different courts. The Legislature did not intend this result.

### A.

Ground water judges, like water court judges, are limited to matters assigned to them by statute. *See State v. Southwestern Colo. Water Conservation Dist.*, 671 P.2d 1294, 1310–11 (Colo.1983). We must construe whether the General Assembly's usage of the words "act or decision" in section 37–90–115(1) of the 1983 amendment to the Act, ch. 409, sec. 2, § 37–90–115, 1983 Colo. Sess. Laws 1416, 1416–17, assigned Commission rulemaking review to ground water judges.

Our inquiry must focus initially on the language of the Act in relation to the APA. Under the APA, "action" refers to rulemaking, adjudication, or both.[4] Prior to 1983, the General Assembly employed the term "action" within the Act's judicial review section:

> [a]ny party . . . adversely affected or aggrieved by any *action* of the ground water commission or the state engineer . . . may obtain judicial review of such action *pursuant to the provisions of section 24–4–106*, C.R.S.1973, except that venue shall lie in the county in which the water rights are located.

Ch. 348, sec. 7, § 37–90–115, 1979 Colo. Sess. Laws 1371, 1374 (emphasis added). In 1983, the General Assembly deleted the term "action," providing instead that an "appeal" to a ground water judge is from "any decision or act" of the Commission:

> (1) Any party, including a ground water management district, adversely affected or aggrieved by *any decision or act of the ground water commission* under the provisions of this article or by a decision or act of the state engineer under section 37–90–

110 *may take an appeal* to the district court in the county wherein the water rights or wells involved are situated.

Ch. 409, sec. 2, § 37–90–115, 1983 Colo. Sess. Laws 1416, 1416–17 (emphasis added). Since 1983, the words "act" and "decision" have been utilized in combination to describe that type of Commission activity which is within the "appeal" purview of the ground water judge.

We must give effect to every word of a statute, if possible. We "are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language." *McMillin v. Colorado*, 158 Colo. 183, 188, 405 P.2d 672, 674 (1965) (quoting *City & County of Denver v. Taylor*, 88 Colo. 89, 95, 292 P. 594, 596 (1930)). The deletion of the word "action" from section 37–90–115 removed the only reference to rulemaking which was contained in that section. In the absence of such reference, the generic provisions of the APA apply to judicial review of Commission rulemaking.[5] *See* § 24–4–107; *cf. Dodge v. Meyer*, 793 P.2d 639, 641 (Colo.App.1990) ("[S]ince [the notary public] statute does not prescribe the procedure for such revocation or by which any revocation order may be judicially reviewed, the procedure to be used is that set forth in the APA. Section 24–4–107, C.R.S. (1988 Repl.Vol. 10A).").

### B.

Other provisions of the Act also confirm the General Assembly's choice to leave Commission rulemaking review to section 106 of the APA. The Commission must "confer and consult" with the boards of directors of the ground water management districts before promulgating "orders or regulations" which would affect the district, section 37–90–111(1)(d), (3), 15 C.R.S. (1990). Thus, the term "order" is specifically differentiated from "regulations" but neither term is defined in the Act; rather, the applicable defi-

---

4. Section 24–4–102, 10A C.R.S. (1988), of the APA defines "action" to include: "the whole or any part of any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

5. We conclude that the 1994 amendment by which the General Assembly definitively provided that Commission rules are subject to APA review under section 24–4–106 constituted a clarification of existing law rather than a change in law.

nitions are supplied by the APA. Under the APA, "orders" involve "adjudication" and "decisions" other than rulemaking:

> (2) "Adjudication" means the procedure used by an agency for the formulation, amendment, or repeal of an order and includes licensing.
>
> . . . .
>
> (5) "Decision" means the determinative action in adjudication and includes order, opinion, sanction, and relief.
>
> . . . .
>
> (10) "Order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) by any agency in any matter other than rule-making.

§ 24–4–102(2), (5), (10), 10A C.R.S. (1988).

The three statutory sections which immediately precede section 37–90–115 do not reference "regulations" but, rather, are directed towards non-rulemaking acts of the Commission which are contained within the terms "orders" and "decisions": hearings on objections, section 37–90–112, 15 C.R.S. (1990); hearings before the Commission or a hearing officer, section 37–90–113, 15 C.R.S. (1990); and petitions to the Commission on contested matters under section 37–90–114, 15 C.R.S. (1990). In providing for an "appeal" to be taken to the district court in the county wherein the "water rights or wells" are situated, sections 37–90–112 to 115 focus on particularized activities other than Commission rules.[6]

At oral argument, Eagle Peak suggested that it might have presented different evidence, or additional evidence, to the Commission in the rulemaking proceeding had it

known that *de novo* presentation before the ground water judge was not available. But parties involved in administrative proceedings are required to exhaust their administrative remedies before seeking judicial review. *T & S Leasing, Inc. v. District Court,* 728 P.2d 729, 731 (Colo.1986). Moreover, as we have stated above, even if the Act had provided for *de novo* judicial review of rulemaking, a new trial-type proceeding would not have been applicable.

### C.

Eagle Peak cites *Kuiper v. Well Owners Conservation Ass'n,* 176 Colo. 119, 490 P.2d 268 (1971) *overruled on other grounds by Alamosa–La Jara Water Users Protection Ass'n v. Gould,* 674 P.2d 914 (Colo.1983), in support of its argument that between 1983 and 1994 the Act assigned judicial review of rulemaking to the ground water judges. That case is plainly distinguishable. In *Kuiper,* well owners sued for injunction and declaratory judgment under the Water Right Determination and Administration Act of 1969 (1969 Act), §§ 37–92–101 to –602, 15 C.R.S. (1990). The complaint was originally filed in the water court for Water Division 1. The Attorney General sought a change of venue to the district court for the City and County of Denver under the provisions of the Administrative Code, 1963 C.R.S. § 3–16–5 (1969 Perm. Supp.), the precursor to the APA. We there held that judicial review of rules and regulations of the State Engineer is a water matter assigned to the water judge for the affected Water Division under the 1969 Act.

In reaching its conclusion in this case, the court of appeals, also relying in part on the *Kuiper* decision, said that:

> date of last publication. The commission shall hear all such appeals pursuant to section 37–90–113. The commission shall have authority to affirm or reject the measures or rules adopted by the district or to modify such measures but only upon consent from the district board. Judicial review of commission actions in such appeals may be taken pursuant to section 37–90–115.
>
> § 37–90–131(1)(b), 15 C.R.S. (1990). No such special reference to section 37–90–115 is made by the Act with regard to Commission-initiated rules.

---

6. We observe that appeal to the Commission of individual ground water management district rulemaking is specifically directed to occur through the hearing procedures of section 37–90–113, and appeal from the Commission to the ground water judge is to occur under section 37–90–115:

> Any person adversely affected or aggrieved by the announcement of control or conservation measures or rules and regulations adopted by the district board may appeal such decision to the ground water commission by filing a notice of appeal and the grounds therefor with the commission not later than thirty days from the

Inasmuch as the General Assembly adopted the 1983 amendment to the Ground Water Act with full knowledge of the *Kuiper* holding, but nevertheless declined to include any specific language limiting the review jurisdiction of the ground water judges, we conclude that no such limitation was legislatively intended....

[O]ur supreme court's conclusions with respect to the jurisdiction of the water judges under the Water Right Act are persuasive upon the question of the jurisdiction of the ground water judges under the Ground Water Act.

*Eagle Peak Farms, Ltd. v. Colorado Ground Water Comm'n*, 870 P.2d 539, 543 (Colo.App. 1993). We disagree.

■ As illustrated in *Alamosa–La Jara Water Users Protection Ass'n v. Gould*, 674 P.2d 914 (Colo.1983), the General Assembly expressly chose to vest the water courts with review of State Engineer rules and regulations pertaining to ground water withdrawals in relation to senior surface water priorities, in light of the differing hydrologic and priority administration issues prevailing among the seven water divisions. Such rules and regulations are subject to the statement of opposition process for water cases. *See* § 37–92–501(3)(a), 15 C.R.S. (1990) ("Any person desiring to protest a proposed rule and regulation may do so in the same manner as provided in section 37–92–304 for the protest of a ruling of a referee, and the water judge shall hear and dispose of the same as promptly as possible."). The court's role in conducting the review is to determine whether the rules "have a reasonable basis in law." *Alamosa–La Jara Water Users*, 674 P.2d at 925. The Assembly articulated the basin-specific character of this particular type of rule and regulation:

(2) In the adoption of such rules and regulations the state engineer shall be guided by the ... following:

(a) Recognition that each water basin is a separate entity, that aquifers are geologic entities and different aquifers possess different hydraulic characteristics even though such aquifers be on the same river in the same division, and that rules applicable to one type of aquifer need not apply to another type.

§ 37–92–501(2)(a), 15 C.R.S. (1990).

The Ground Water Act exhibits no such particular assignment of Commission rulemaking review to ground water judges. Rather, since 1983, the Act has utilized "act" or "decision" in contradistinction to the terms "action" and "regulation."

The rule at issue here was "intended to standardize policies and procedures of the Ground Water Commission, to make information as widely available as possible, and to ensure uniform and consistent action by the Commission." Rule 3.6, 2 C.C.R. 410–1 (1992). The general practice of the Assembly has been to provide for state agency rulemaking review in the Denver District Court under the APA. On the other hand, review of non-rulemaking activities is often directed to occur in the district where the regulated facility is located.[7]

Here, the ground water judge for Adams County recognized that APA rulemaking review in the Denver District Court would "provide for uniformity in review of rules in one central authority rather than providing for the balkanization of decision making explicit in [Eagle Peak's] position." *Eagle Peak Farms, Ltd. v. Colorado Ground Water Comm'n*, No. 92CV0626, slip op. at 2 (Colo. Dist.Ct., July 16, 1992) (final order). The ground water judge correctly interpreted the

7. For example, the Colorado Air Quality Control Act (Air Act) authorizes the Air Pollution Commission to promulgate rules and regulations, §§ 25–7–110 to –114, 11A C.R.S. (1989), with judicial review thereof under the APA in Denver District Court. *See generally CF & I Steel Corp. v. Colorado Air Pollution Control Comm'n*, 199 Colo. 270, 610 P.2d 85 (1980). But judicial review of any final order or determination by the division or the Commission is to occur in the district court wherein the affected air pollution source is located. § 25–7–120(3), 11A C.R.S. (1989). *See also Air Pollution Control Comm'n v. District Court*, 193 Colo. 146, 150, 563 P.2d 351, 354 (1977).

Similarly, under the Colorado Water Quality Control Act, judicial review of rulemaking is pursuant to the state APA in the Denver District Court; review of any final order or determination of the commission is in the district court where the pollution source is located. § 25–8–404(1), (2), 11A C.R.S. (1989).

Act and the APA. The "acts" and "decisions" of the Commission referenced in section 37–90–115 are non-rulemaking in nature, such as those involving the application of statutes or rules to specific well permit applications, water rights, change of water rights, or other matters focusing on particular water users in specific circumstances.

Admirably, counsel for Eagle Peak filed a simultaneous rulemaking judicial review petition in the Denver District Court for on-the-record review under the APA. That proceeding is proper, and we express no opinion on the merits thereof.

■ "To place the ultimate determination in the courts through judicial review of this legislative action would violate the constitutional principle of the separation of powers." *Colorado Land Use Comm'n*, 604 P.2d at 35. In light of our holding, we do not reach the Commission's argument that section 37–90–115(1), if applicable to Commission rules, would violate the separation of powers doctrine. We are to avoid, if possible, a statutory construction which may result in constitutional invalidity. *See Adams County School Dist. No. 50 v. Heimer*, 919 P.2d 786, 792 (Colo.1996); *see also People v. Thomas*, 867 P.2d 880, 883 (Colo.1994).

## IV.

Accordingly, we reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion, with directions that it return the case to the ground water judge for dismissal of the rulemaking appeal filed in Adams County.