2012 CO 52

**COLORADO OIL AND GAS CONSERVA-TION COMMISSION; and David Neslin, in his official capacity as Acting Director of the Colorado Oil and Gas Conservation Commission, Petitioners**

v.

**GRAND VALLEY CITIZENS' ALLIANCE, Cary Weldon, Ruth Weldon, Wesley Kent, Marcia Kent, and Western Colorado Congress, Respondents.**

No. 10SC532.

Supreme Court of Colorado,
En Banc.

June 25, 2012.

John Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Matthew J. Lepore, Assistant Attorney General, Casey A. Shpall, Deputy Attorney General, Denver, Colorado, Attorneys for Petitioners.

Heizer Paul Grueskin LLP, Martha M. Tierney, Denver, Colorado, Law Offices of Luke J. Danielson, Luke Danielson, Dean W. Price, Gunnison, Colorado, Law Office of Paul Zogg, Paul Zogg, Boulder, Colorado, Attorneys for Respondents.

Bruce T. Barker, Weld County Attorney, Greeley, Colorado, Attorney for Amicus Curiae the Board of County Commissioners of Weld County.

Michael K. Grinnan, Yuma County Attorney, Burlington, Colorado, Attorney for Amicus Curiae the Board of County Commissioners of Yuma County.

Beatty & Wozniak, P.C., Kenneth A. Wonstolen, Ruth M. Moore, Denver, Colorado, Attorneys for Amicus Curiae Colorado Oil & Gas Association.

Cassandra L. Coleman, Assistant Garfield County Attorney, Glenwood Springs, Colorado, Attorney for Amicus Curiae the Board of County Commissioners of Garfield County.

David Baumgarten, Gunnison County Attorney, Gunnison, Colorado, Attorney for Amicus Curiae the Board of County Commissioners of Gunnison County.

Michael Freeman, Denver, Colorado, Attorney for Amici Curiae San Luis Valley Citizens Alliance, San Juan Citizens Alliance, and Earthworks Oil and Gas Accountability Project.

Justice EID delivered the Opinion of the Court.

¶ 1 Grand Valley Citizens' Alliance, along with Cary Weldon, Ruth Weldon, Wesley Kent, Marcia Kent, and Western Colorado Congress (collectively, "GVC") filed a complaint against the Colorado Oil and Gas Conservation Commission and others (the "Commission") alleging that it was entitled to a hearing on an application for permit to drill ("APD") pursuant to section 34–60–108(7), C.R.S. (2011), of the Oil and Gas Conservation Act (the "Act") and section 24–4–105, C.R.S. (2011), of the Colorado Administrative Procedure Act. The trial court dismissed the complaint on the ground that GVC had no standing to request a hearing.

¶ 2 GVC appealed and the court of appeals reversed. *See Grand Valley Citizens' Alliance v. Colorado Oil & Gas Conservation Comm'n,* —— P.3d ——, ——, 2010 WL 2521747, at *6 (Colo.App.2010). The court of appeals reasoned that GVC was entitled to a hearing under subsection 108(7) — which states that on the "filing of a petition concerning any matter within the jurisdiction of the [C]ommission, it shall promptly fix a date for a hearing thereon" — because it had filed a petition on a "matter within the jurisdiction of the [C]ommission." *Id.* at —— — ——.

¶ 3 We granted certiorari and now reverse. Subsection 108(7)'s reference to a hearing must be read in context with the overall statutory scheme. Subsection 108(2) requires that "[n]o rule, regulation, order, or amendment thereof, shall be made by the [C]ommission without a hearing. . . ." When read in context, subsection 108(7)'s reference to a hearing refers to the hearing required by subsection 108(2), which applies only to rules, regulations, and orders. Because GVC is challenging a permit, not a "rule," "regulation," or "order," it is not entitled to a hearing under subsection 108(7). Permits are expressly governed by section 34–60–106(1)(f), C.R.S. (2011), which gives the Commission broad authority to govern APDs and determine who can request a hearing. In this case, the Commission's rules do not permit a citizens group like GVC to request a hearing for an APD, and instead consider their objection as a complaint. Accordingly, we hold that the Commission properly denied GVC's request for a hearing.

### I.

¶ 4 In 1969 the federal government conducted an experiment called Project Rulison in Garfield County, Colorado. During this project, a large nuclear device was detonated 8,400 feet underground in an attempt to free natural gas. Project Rulison did not produce any marketable gas because the liberated gas contained radioactive matter.

¶ 5 After the blast, there was little to no drilling at or near the blast site. In the 1990s, companies sought permission to drill in the area. In 2004, the Commission stated that a hearing would be required for any permit application involving drilling within one-half mile of the blast site.

¶ 6 In 2008, a company applied for permits to drill wells approximately three miles from the blast site. This request did not trigger an automatic hearing because the request did not seek to drill within the restricted one-half mile radius.

¶ 7 GVC petitioned the Commission for a hearing on the APD. GVC's request for a hearing was denied on the ground that the Commission's rules allow only operators, surface owners, and relevant local governments to request a hearing on an application for permit to drill. The acting director of the Commission stated that the request to intervene was treated as a complaint under the Commission's rules and considered as such. GVC then filed this present suit, alleging that they were entitled to a hearing under section 34–60–108(7) and section 24–4–105 of the Colorado Administrative Procedure Act. The district court concluded that GVC had no standing to seek a hearing and dismissed the complaint.

¶ 8 GVC appealed to the court of appeals and the court of appeals reversed, holding that GVC was entitled to a hearing under section 34–60–108(7). *See Grand Valley Citizens,* —— P.3d at ——. We granted certiorari[1] and now reverse the judgment of the court of appeals.

---

1. We granted certiorari on the following issues:

    1. Whether the court of appeals erred by sub-

stituting its interpretations of the Act,

## II.

¶ 9 Section 34–60–108(2) provides that "[n]o rule, regulation, or order, or amendment thereof, shall be made by the [C]ommission without a hearing...." Section 34–60–108(7) states that "[o]n the filing of a petition concerning any matter within the jurisdiction of the [C]ommission, it shall promptly fix a date for a hearing thereon and shall cause notice of the filing of the petition and of the date for the hearing thereon to be given." The question in this case is whether the Commission was required to hold a hearing as requested by GVC. We hold that it was not.

¶ 10 The court of appeals reasoned, and GVC argues before us, that subsection 108(7) requires a hearing in this case because GVC filed "a petition" concerning "[a] matter" within the Commission's jurisdiction. This reasoning is flawed, however, because it reads the provision in isolation rather than within the overall statutory context.

¶ 11 Subsection 108(2) states that no *"rule, regulation,* or *order,* or amendment thereof, shall be made by the [C]ommission without a hearing ... except as provided in this section." (Emphasis added). Subsection 108(2) thus requires a hearing only for a "rule, regulation, or order, or amendment thereof." When read in context, subsection 108(7)'s language requiring the Commission to "promptly fix a date for a hearing" upon the filing of a petition on "any matter" refers to the hearing described in subsection 108(2), that is, a hearing on a "rule, regulation, or order, or amendment thereof." In other words, subsection 108(7)'s instruction that a "hearing" be "promptly fix[ed]" for "any matter" does not expand the list of subjects for which a hearing is required under subsection 108(2).

¶ 12 If GVC were correct, and subsection 108(7) required a hearing in every instance, subsection 108(2)'s specification of hearings

which divests the Commission of discretion to establish, by rule, reasonable limits on who may invoke the Commission's jurisdiction to initiate an adjudicatory hearing on APDs, for the Commission's longstanding and reasonable interpretation of its enabling legislation.

for "rule[s], regulation[s], [and] order[s]" would be rendered meaningless. In addition, various provisions throughout the Act that mandate hearings in compliance with section 34–60–108(7) would be entirely unnecessary. *See, e.g.,* § 34–60–106(17)(d), C.R.S. (2011) (requiring a hearing "pursuant to the procedures set forth in section 34–60–108(7)" before a certificate of closure may be issued); § 34–60–121(1), C.R.S. (2011) (allowing penalties to be imposed after a hearing has been held). From these provisions, we conclude that the legislature was familiar with the concept of a hearing and specified instances in which a hearing was required. GVC's reading of the statute as requiring a hearing in all instances is inconsistent with this understanding.

¶ 13 This case involves a "permit" to drill, not a rule, regulation, or order. Accordingly, a hearing was not mandated by subsection 108(7). "Permits" are addressed in another section of the Act, section 34–60–106. Importantly, the term "permit" does not appear in section 34–60–108 at all, but it does appear throughout the Act together with the terms "rules" and "orders." *See, e.g.,* § 34–60–121(1) ("Any operator who violates any provision of this article, any rule or order of the [C]ommission, or any permit ...."); § 34–60–124(4)(a)(III), C.R.S. (2011) (Commission may expend funds to "investigate alleged violations of any provision of this article, any rule or order of the [C]ommission, or any permit"); § 34–60–128(3)(d)(III), C.R.S. (2011) (imposing "rules" regarding habitat stewardship, including minimizing habitat disturbance in "orders or rules" and as "conditions of approval to a permit to drill"). These distinctions show that the legislature intended for permits to be separate from other forms of agency action such as orders and rules. *See Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1010 (Colo.2008) ("[T]he use of different terms signals an in-

2. Whether the court of appeals erred by basing its decision on its interpretation of a single sentence of a comprehensive legislative scheme rather than construing the Act as a whole and without considering the consequences of its construction or the overall goal of the statutory scheme.

tent on the part of the General Assembly to afford those terms different meanings.").

¶ 14 Under section 34–60–106(1)(f), no well drilling "shall be commenced ... without first obtaining a permit from the [C]ommission, under such rules and regulations as may be prescribed by the [C]ommission." The language of section 34–60–106(1)(f) gives the Commission broad authority to promulgate rules governing permits. It does not require the Commission to hold a hearing on APDs. Instead, it states that oil and gas drilling cannot commence without obtaining a permit, under the rules and regulations set forth by the Commission.

¶ 15 Here, the Commission promulgated a rule stating that any person seeking to drill must file an APD. 2 Colo.Code Regs. § 404–1:303.a (as amended 2009). However, only the operator, surface owner, or the relevant local government may request a hearing on an APD under the Commission's rule. 2 Colo.Code Regs. § 404–1:503b.7 (as amended 2009). GVC cannot seek a hearing under the Commission's rule because it is not the operator, surface owner, or relevant local government.

¶ 16 This is not to say, however, that GVC cannot participate in the process and voice its concerns. Under Rule 303.m.(1), the director "may withhold approval of any [APD] ... based on information supplied in a written complaint submitted by any party with standing under Rule 522.a.(1)." 2 Colo.Code Regs. § 404–1 (2009). Rule 522.a.(1) states, in part, that a complaint can be filed by "any other person who may be directly and adversely affected or aggrieved as the result of [an] alleged violation." 2 Colo.Code Regs. § 404–1 (2009). Under these rules, GVC's request to intervene was properly treated as a complaint.

¶ 17 In this case, the legislature granted the Commission broad authority under section 34–60–106(1)(f) to regulate the permitting process. Here, the Commission has determined, pursuant to its rules, that only a limited number of parties, not including GVC, may request a hearing on an APD. We see no grounds for disturbing that determination. *See Colorado Ground Water Comm'n v. Eagle Peak Farms*, 919 P.2d 212,

217 (Colo.1996) (agency rules are "presumed valid" and any challenging party has "a heavy burden" to establish that the agency violated constitutional or statutory law, exceeded its authority, or lacked a basis in the record).

¶ 18 In sum, we hold section 34–60–108(7) requires a hearing only for rules, regulations, and orders. Permits are governed by section 34–60–106(1)(f), which grants the Commission broad authority to promulgate rules governing the permitting process, including the authority to determine who may request a hearing. Because the Commission's rules do not entitle a citizens' group to a hearing, the Commission properly denied GVC's hearing request in this case.

### III.

¶ 19 For these reasons, we reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

Justice HOBBS, dissents.

Justice HOBBS, dissenting.

¶ 20 I respectfully dissent. When a local government declines to represent its citizens' concerns regarding harm to public health, safety, and welfare, in a proceeding before the Colorado Oil and Gas Conservation Commission ("Commission") on an application for a permit to drill, the Commission should grant the concerned citizens a hearing before the Commission. By depriving citizens of a hearing, the Commission acted arbitrarily and capriciously in violation of the Colorado Administrative Procedure Act. The Commission's action should be vacated and this case should be remanded to the Commission to hear evidence and arguments presented by the Grand Valley Citizens' Alliance and other respondents ("Citizens").

¶ 21 In March 2008, the Citizens filed an application with the Commission protesting applications for permits to drill near the Rulison blast site in Garfield County. The permits would allow drilling within three miles of ground zero of a 1969 nuclear detonation. The Citizens' request for hearing asserted

that the "nuclear device necessarily created a variety of toxic and radioactive contaminants, which persist subsurface in the blast area." It further alleged that, if the contaminants were to reach the surface or contaminate shallow groundwater, the result could be "serious and persistent contamination of soils and groundwater." Moreover, the "scientific or technical basis" for allowing the drilling despite these risks was unclear, the Citizens' petition alleged, and the applicant had not demonstrated that the drilling would "meet statutory requirements for protection of the environment, wildlife, and the health, safety and welfare of the public."

¶ 22 The Citizens requested a hearing in order to present evidence and witnesses. As described in the Commission's rules, the hearing would also have allowed the Citizens to make opening and closing statements and cross-examine any other witnesses.[1] However, the Commission denied the Citizens a hearing, on the basis that the Commission's rules did not permit them to request a hearing. The Commission simultaneously approved the permits to drill.

¶ 23 The Citizens appealed the denial of a hearing to the Denver District Court, alleging violations of the Administrative Procedure Act and the Oil and Gas Conservation Act, including the allegation that the Commission's action was arbitrary and capricious. The district court dismissed the case for lack of subject matter jurisdiction and failure to state a claim. The court of appeals reversed and remanded. I would affirm the court of appeals.

¶ 24 The Commission argues that its rules allow for a hearing on an application for a permit to drill only at the request of the applicant, the surface owner, or a local government, and the Majority agrees. Maj. op. at ¶ 15. The Commission's Rule 503.b(7), 2 Colo.Code Regs. § 404–1, allows for the operator, the surface owner, or the "relevant

local government" to request such a hearing. The Commission added the relevant local government to the list in a 2003 rule revision. The Commission's only stated purpose in doing so was "to provide an opportunity to a local government to obtain a hearing on significant issues related to public health, safety and welfare, including the environment."[2] The palpable reason for this opportunity was to allow the local government to represent its constituents who may be aggrieved by the threats drilling would present to the public and the environment.

¶ 25 Unfortunately, local governments do not always have the capacity to perform this representative role before the Commission. As Garfield County explains in this case, the hearings "require substantial time and effort by staff, as well as the expenditure of funds for outside experts. In a case as complicated as the one at bar, participation by Garfield County would be extremely costly." In such a case, the Commission's rules, as it interprets them, cause it to avoid hearing the interests of the local government's citizens—but such a hearing is precisely what the Commission contemplated in its 2003 rule revision to be significant to insuring the public health and welfare.

¶ 26 I would read the rules to allow the Citizens the hearing they request. When the "relevant local government" declines to pursue a hearing before the Commission on an application for a permit to drill that raises significant issues of public health, safety and the environment, the local government's aggrieved citizens should have their evidence and witnesses heard. Disallowing this hearing thwarts the purpose behind the Commission's rules of 2003: to allow the Commission to hear evidence on the proposed drilling's effects on the public health and welfare, helping the Commission to make a more informed and balanced decision. I would hold the Commission's reading of the rules in this

---

1.  *See* Rule 503.b(7)(C), 2 Colo.Code Regs. § 404–1 (as amended 2009) (providing for a hearing in similar fashion as Rule 508.k); Rule 508.k(2), 2 Colo.Code Regs. § 404–1 (providing for a hearing in accordance with Rule 528); Rule 528.a, .e, 2 Colo.Code Regs. § 404–1 (allowing for opening and closing statements, presentations, witnesses, and cross-examination).

2.  Colo. Oil & Gas Conservation Comm'n, Order No. 1R–93, Report of the Commission in the Matter of Changes to the Rules and Regulations of the Oil and Gas Conservation Commission of Colorado, Exhibit B: Statement of Basis and Purpose (2003).

case to be arbitrary and capricious in violation of the Administrative Procedure Act, § 24–4–106(7), C.R.S. (2011), because it contradicts the rules' basis and purpose.[3]

¶ 27 Accordingly, I respectfully dissent. I would direct the Commission to hear the Citizens' evidence before deciding whether or not to issue the permits to drill.

---

**3.** Similarly, in *Public Citizen Inc. v. Mineta,* the Ninth Circuit held that an agency's "interpretation of its own regulations" was unreasonable and unentitled to deference because the interpretation was "clearly at odds with [the agency's] goal" for the regulation. 343 F.3d 1159, 1166–67 (9th Cir.2003). *See also Dantran, Inc. v. U.S. Dep't of Labor,* 171 F.3d 58, 65 (1st Cir.1999) ("[C]ourts should be reluctant to rubber-stamp an agency's interpretation of its regulations when that interpretation has no plausible link to the goals of the regulatory scheme and would lead to absurd results.").