The **NATIONAL WILDLIFE FEDERATION, the Colorado Wildlife Federation, Michael Keplinger, and Citizens for Safe Energy, Petitioners,**

v.

The **COTTER CORPORATION; Dr. Frank Traylor, in his capacity as Executive Director of the Colorado Department of Health; Albert Hazle, in his capacity as Director of the Radiation and Hazardous Wastes Control Division of the Colorado Department of Health; and Gary Broetzman, in his capacity as Director of the Water Quality Control Division of the Colorado Department of Health, Respondents.**

No. 81SC373.

Supreme Court of Colorado,
En Banc.

June 6, 1983.

Rehearing Denied July 11, 1983.

Frances L. Green, Robert J. Golten, Boulder, for petitioners.

Holme Roberts & Owen, A. Edgar Benton, Richard L. Schrepferman, Edmond F. Noel, Jr., Denver, for respondent, Cotter Corp.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Richard L. Griffith, Asst. Atty. Gen., Denver, for respondents, Traylor, Hazle, and Broetzman.

ROVIRA, Justice.

We granted certiorari to review a decision of the Colorado Court of Appeals dismissing the petitioners' complaint for lack of standing. *National Wildlife Federation v. Cotter Corp.,* 646 P.2d 393 (Colo.App. 1981).

We reverse.

I.

The genesis of this case was in 1977 when the Cotter Corporation (Cotter) began construction of a new uranium mill and a facility for disposal of the tailings. Cotter applied to the Radiation and Hazardous Wastes Control Division (RHWCD) of the Colorado Department of Health (Department) for an amended radioactive-materials license for operation of its mill and tailings impoundment, pursuant to the Radiation Control Act (RCA). Section 25–11–101 *et seq.,* C.R.S.1973 (now in 1982 Repl.Vol. 11). Thereafter, Cotter sought a certificate of designation from the Fremont County Board of County Commissioners (County) for the tailings impoundment as a solid-

wastes disposal site pursuant to the Solid Wastes Disposal Sites and Facilities Act. Section 30–20–101 *et seq.*, C.R.S.1973 (1977 Repl.Vol. 12).

In 1979 a joint public hearing was held by the Department and the County on Cotter's application for an amended radioactive-materials license and for a certificate of designation as a solid-wastes disposal facility. Subsequently, RHWCD issued the license, and the County authorized the certificate.

The petitioners brought suit against the respondents seeking judicial review of the decision of RHWCD to issue an amended radioactive-materials license for the uranium-mill waste-disposal facility and the failure of the Water Quality Control Division of the Department to require, and Cotter to obtain, a subsurface-disposal permit (505 permit) pursuant to section 505 of the Water Quality Control Act (WQCA), section 25–8–505, C.R.S.1973.

After the complaint was filed, the Department ordered Cotter to apply for a 505 permit, but Cotter refused. The Department then filed a cross-claim against Cotter seeking a mandatory injunction requiring Cotter to comply with its order, pursuant to section 25–8–607, C.R.S.1973.

Cotter moved to dismiss the complaint and the cross-claim on the basis that the County, an indispensable party, had not been joined. The trial court agreed, and the case was dismissed.

The petitioners and the Department appealed. The court of appeals held that the County was not an indispensable party and reversed the dismissal of the Department's cross-claim.[1] It upheld the dismissal of the petitioners' complaint on the ground that they lacked standing to enforce either the RCA or the WQCA because neither act contains a private enforcement mechanism.

On petition for rehearing, petitioners claimed that the Administrative Procedure Act (APA), section 24–4–106, C.R.S.1973, granted a right of review and argued that the appropriate inquiry is not whether they had a right to enforce the substantive stat-utes but, rather, whether they had standing as affected or aggrieved parties to seek review of the Department's failure to enforce the statutes. The court of appeals denied their petition, holding that the petitioners "did not seek judicial review under the APA, since the action was not commenced until November 15, 1979, and not within the 30 day mandatory time period therefor. Section 24–4–106(4), C.R.S.1973 (1980 Cum.Supp.)." 646 P.2d at 395.

## II.

The first issue that we address is Cotter's claim that the court of appeals erred in holding that the County was not an indispensable party. Petitioners argue that because Cotter failed to file a petition for a writ of certiorari on this issue the decision of the court of appeals on the indispensable party claim is final. We conclude that we may address this issue, and we agree with the reversal of the dismissal of the Department's cross-claim. However, we disagree as to the dismissal of petitioners' complaint.

Section 13–4–108, C.R.S.1973, provides that "any party in interest who is aggrieved by the judgment of the court of appeals may appeal by application to the supreme court for a writ of certiorari." Cotter was in no sense aggrieved by the judgment of the court of appeals in its holding concerning petitioners' complaint. Cotter obtained affirmance of the trial court's dismissal of the petitioners' complaint, albeit on different grounds. There was nothing for it to appeal from. As to the reversal of the trial court's dismissal of the Department's cross-claim, that was an adverse ruling from which Cotter could have sought a writ of certiorari.

Cotter contends that because "solid waste disposal sites" are exempt from the 505 permit requirements of the WQCA, the County, by its issuance to Cotter of a "Certificate of Designation" for a solid-wastes disposal site, became an indispensable party to the action. Therefore, it argues, the

---

·1. That part of the judgment is not challenged.

complaint was properly dismissed for failure to join the County.

Section 24–4–106, at the time in question, provided that in a suit for judicial review of agency action "[e]very party in the agency action not appearing as plaintiff in such action . . . shall be made a defendant." Failure to join an indispensable party mandated dismissal.[2] *West-Brandt Foundation, Inc. v. Carper,* 199 Colo. 334, 608 P.2d 339 (1980); *Cissell v. Board of Assessment Appeals,* 38 Colo.App. 560, 564 P.2d 124 (1977).

Cotter argues that because the Board and the County held a joint hearing, the County is therefore a party to the Department's RCA license proceeding. The County's voluntary participation in the joint hearing, for the convenience of all concerned, is not sufficient to render it a party to the Department's proceeding.

We agree with the court of appeals that the County was not an indispensable party. The two actions challenged were the issuance of an amended radioactive-materials license by the Radiation and Hazardous Wastes Division and the failure of the Water Quality Control Division to require a permit under section 505. Both permits are the responsibility of the Colorado Department of Health and not of the County. The County may have some interest in the proceeding, but that is not sufficient to make it an indispensable party. *See West-Brandt Foundation, Inc. v. Carper, supra.*

### III.

Petitioners claim that the court of appeals erred in holding that its suit could not be maintained under the APA, section 24–4–101 et seq., C.R.S.1973, because the action was barred by the APA's 30-day limitations period. Section 24–4–106(4), C.R.S.1973 (1980 Supp.). We agree.

Section 107 of the APA provides that the provisions of the APA apply to state agencies but contains the proviso that where there is a conflict between the APA and a specific statutory provision relating to a specific agency, the specific statutory provision shall control. Section 24–4–107, C.R.S.1973. *See Montgomery Ward & Co. v. Department of Revenue,* 628 P.2d 85 (Colo.1981) (general hearing requirements of the APA must give way in the face of contrary procedures applicable to a particular agency). Section 25–1–113(1), C.R.S. 1973, provides for judicial review of Department of Health decisions and specifies a 90-day limit. It is undisputed that petitioners' complaint was filed in the district court on the 90th day following the decision of the Department to approve the issuance of the amended radioactive-materials license.

Cotter does not seriously dispute petitioners' contention concerning the radioactive-materials license, but argues that the 30-day limitation period of section 25–8–404(3), C.R.S.1973, is applicable to the subsurface-disposal permit (505 permit) because it is the specific judicial review provision regarding agency action under the WQCA. We disagree.

Section 25–8–404(3) provides that "[a]ny proceeding for judicial review of any final rule, order, or determination of the commission or division shall be filed within thirty days after said rule, order, or determination has become final." In this case there was no final order of the Department concerning the 505 permit. Consequently, judicial review is not available under this section.

Section 25–1–113 provides that "[a]ny person aggrieved and affected by a decision of the board [of health] . . . is entitled to judicial review by filing . . . within ninety days after the public announcement of the decision, an appropriate action requesting such review." This section, by its very terms, provides a right to judicial review only of decisions by the

---

**2.** Section 24–4–106 has since been amended to provide that "[a]n action shall not be dismissed for failure to join an indispensable party until an opportunity has been afforded to an affected party to bring the indispensable party into the action." Section 24–4–106, C.R.S.1973 (1982 Repl.Vol. 10).

board, and it contemplates that these decisions will be publicly announced. Consequently, we do not believe that this section provides for judicial review of the Department's failure to act.

Where the statutes regulating the Department do not specifically provide a time for judicial review when the Department fails to act, we must look to the general provisions of the APA. Section 106(4) of the APA provides that "any person adversely affected or aggrieved by an agency action may commence an action for judicial review in the district court within thirty days after such agency action becomes effective." "Action" is defined as including "failure to act." Section 24–4–102, C.R.S.1973 (1982 Repl.Vol. 10). Where, as here, there is no specific decision being challenged, and consequently no specific date from which to reckon the time for filing for judicial review, the standard must be that the action is to be brought within a reasonable time. *Cf. Recreation Vehicle Industry Ass'n v. E.P.A.,* 653 F.2d 562 (D.C. Cir.1981) (when an agency leaves room for genuine doubt as to the applicability of its orders or regulations, the statutory period for filing a petition for review is tolled until such doubt is eliminated). Under the circumstances of this case, the petitioners brought the action in a reasonable time by bringing it within 90 days of the Department's decision on the radioactive-materials license.

### IV.

Having concluded that the court of appeals erred in ruling that the petitioners' complaint was not timely filed, we must next determine whether the petitioners were persons aggrieved or affected by the actions of the Department. *See* sections 24–4–106 and 25–1–113, C.R.S.1973.

The court of appeals held, and respondent Cotter argues, that petitioners lacked standing because neither the RCA nor the WQCA creates a private right of action. For this position, they invoke *California v.*

*Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), a case in which the Sierra Club sought to enjoin construction of water diversion facilities, based upon section 10 of the Rivers and Harbors Appropriations Act of 1899. That act prohibits "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States." The Supreme Court held that no private right of action could be implied, because there was no indication of intent on the part of Congress to provide such a right.

Whatever relevance *California v. Sierra Club* might have if this were a private action by petitioners against Cotter for violations of the statutes involved, it is not relevant here. This is an action for judicial review of the action of an administrative agency and, as such, is governed by different principles.

Viewed as a question of standing to obtain judicial review of administrative action, the proper inquiry is whether petitioners are "affected" or "aggrieved" within the meaning of the relevant statutes. *See* sections 24–4–106 and 25–1–113, C.R.S.1973. Although there is no statutory definition of these terms in the licensing context, the term "aggrieved" is defined for purposes of judicial review of rulemaking to mean "having suffered actual loss or injury or being exposed to potential loss or injury to legitimate interests including, but not limited to, business, economic, aesthetic, governmental, recreational, or conservational interests." Section 24–4–102, C.R.S.1973 (1982 Repl.Vol. 10). In the absence of any indication of legislative intent to the contrary, we see no reason to employ a different definition in the case before us.

In deciding the issue of standing we must accept as true the allegations contained in the complaint, subject to proof at trial.[3] The amended complaint alleges that the National Wildlife Federation (NWF) is a nonprofit District of Columbia Corpora-

---

**3.** Cotter raises some factual arguments concerning the allegations of standing and capacity

to sue that are not properly before us and can be resolved on remand to the trial court.

tion having 25,000 members in Colorado. It further alleges that NWF members are potentially affected by Cotter's milling activities through damage to the Arkansas River and the surrounding area as a recreational and scenic resource and as a habitat for fish and wildlife, as well as through direct exposure of members to radioactive and toxic materials transported in air, water, and soil, and by their introduction into the biosphere.

The Colorado Wildlife Federation (CWF) is a Colorado nonprofit corporation with approximately 1,500 members, most of whom reside in Colorado. The allegations of threatened injury are the same as for members of NWF.

Michael Keplinger is a citizen of Colorado who lives and works in Canon City, in proximity to the Cotter uranium mill. He is allegedly exposed on a daily basis to the potential hazards of the milling operation, including exposure to toxic and radioactive materials.[4]

Citizens for Safe Energy (CSE) is an unincorporated association of residents of the Pueblo area. They allege that they may be harmed by the contamination of the water supply of the City of Pueblo. Pueblo's water supply comes from the Arkansas River.

■ Cotter argues that the complaint does not contain the allegations of individualized injury to members of NWF and CWF that are required by *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).[5] We disagree. *Sierra Club* distinguished between "an organization whose members are injured"—which does have standing—and an organization with a mere "interest in a problem"—which does not have standing. *Id.* at 739, 92 S.Ct. at 1368. The complaint in this case alleges, *inter alia,* that members of NWF and CWF face the threat of direct exposure to radioactive and toxic materials. Such an allegation is a far cry from the allegation of the Sierra

Club that it had "a special interest in the conservation and the sound maintenance of the national parks. . . ." *Id.* at 735 n. 8, 92 S.Ct. at 1366 n. 8.

■ Michael Keplinger alleges direct personal exposure to toxic and radioactive materials. CSE alleges that the water supply of its members is threatened with radioactive contamination. Both of these alleged injuries are to personal health, and are sufficient to establish that the parties are adversely affected or aggrieved. We therefore conclude that petitioners have standing to seek review of the Department's action.

### V.

Cotter and the Department claim that petitioners' claim for relief under the WQCA is moot because the 1981 legislature repealed section 25–8–505 as a part of a comprehensive revision of the Act. *See* 1981 Colo.Sess.Laws, chs. 324–25. Consequently, they argue, a judgment by the court could have no practical legal effect. The Department also claims that its order to Cotter requiring it to apply for a 505 permit, as well as its cross-claim, renders this action moot. The mootness issue presents questions that we believe are better addressed initially by the trial court.

### VI.

The judgment of the court of appeals is reversed as to the dismissal of petitioners' complaint, and affirmed as to the Department's cross-claim, and the cause is remanded for proceedings consistent with the views expressed in this opinion.

---

4. According to Cotter, petitioner has since moved to Colorado Springs. *See* note 3, *supra.*

5. Although not bound by the federal case law on standing, we have often looked to it for

guidance. *See, e.g., Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980); *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).