The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 6, 2019

## 2019COA86

**No. 18CA1147, *Weld Air v. Colo. Oil & Gas Conservation Comm'n* — Courts and Court Procedure — Jurisdiction of Courts — Standing; Administrative Law — State Administrative Procedure Act — Oil and Gas Conservation Act — Colorado Oil and Gas Conservation Commission — Judicial Review**

A division of the court of appeals concludes that Colorado's Administrative Procedure Act, the Oil and Gas Conservation Act, and the Colorado Oil & Gas Conservation Commission's (the Commission) regulations authorize the subject citizen and community groups to seek judicial review of the Commission's Form 2A permit approvals for oil and gas operations. The division also concludes that the Commission did not act arbitrarily or capriciously in granting the challenged permits because it (1) considered relevant public comments — as evidenced by the administrative record documenting the Commission's consideration

— and (2) complied with its setback regulations, as the division holds that Rule 604.c.(2)(E)(i) does not require the Commission to conduct an alternative site analysis before granting a Form 2A permit. *See* Dep't of Nat. Res. Rule 604.c.(2)(E)(i), 2 Code Colo. Regs. 404-1. Accordingly, the division affirms the judgment.

COLORADO COURT OF APPEALS                    **2019COA86**

Court of Appeals No. 18CA1147
City and County of Denver District Court No. 17CV31315
Honorable Kenneth M. Laff, Judge

Weld Air & Water, Sierra Club, NAACP Colorado State Conference, and Wall of Women,

Plaintiffs-Appellants and Cross-Appellees,

v.

Colorado Oil and Gas Conservation Commission,

Defendant-Appellee and Cross-Appellant,

and

Extraction Oil and Gas, Inc.,

Defendant-Appellee and Intervenor.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FOX
Freyre and Welling, JJ., concur

Announced June 6, 2019

Kevin Lynch, Wyatt Sassman, Sarah Matsumoto, Denver, Colorado, for Plaintiffs-Appellants and Cross-Appellees

Philip J. Weiser, Attorney General, Kyle W. Davenport, Senior Assistant Attorney General, David A. Beckstrom, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee and Cross-Appellant

Brownstein Hyatt Farber Schreck, LLP, Mark J. Mathews, Julia E. Rhine, Denver, Colorado, for Defendant-Appellee and Intervenor

¶ 1 Appellants, Weld Air & Water, Sierra Club, NAACP Colorado State Conference, and Wall of Women (Petitioners) and cross-appellee, the Colorado Oil and Gas Conservation Commission (the Commission), appeal the district court's judgment dismissing Petitioners' claim and affirming the Commission's approval of two permits Extraction Oil and Gas, Inc. (Extraction) requested within Weld County. Petitioners appeal the permit approvals, and the Commission cross-appeals the district court's judgment that Petitioners had standing to seek judicial review. We affirm.

I. Background

¶ 2 This appeal arises from the Commission's approval of Extraction's Form 2A permit applications.

¶ 3 In May 2016, Extraction filed two Form 2A applications with the Commission seeking approval to conduct oil and gas operations in Greeley, Colorado at an existing drilling site.[1] The proposed site

---

[1] The application requested permission for two Vetting well pads that would include twenty-four wells, two modular large volume tanks, eighteen oil tanks, twenty-four separators, four vapor recovery units, four water tanks, and one lease automatic custody transfer unit.

1

— called the Vetting well pads — was approximately 1360 feet from the Bella Romero Academy Middle School buildings.



¶ 4    In June 2016, the Commission accepted public comments on Extraction's applications, including comments from parents of the Bella Romero students, from neighboring property owners, and from community and environmental groups.  Three concerns raised in the public comments, and relevant to this appeal, were (1) the health risk to Bella Romero students playing outdoors where the proposed development was less than 1000 feet from the school's playgrounds and fields; (2) Extraction's emergency response plan given the proposed development's proximity to the school; and (3)

2

consideration of alternative locations farther from the school. Petitioners asked the Commission to deny the permit applications.

¶ 5     On March 10, 2017, the Commission, through its Director, approved Extraction's Form 2A applications for the Vetting well pads. Petitioners then sued in district court, arguing that the Commission acted arbitrarily and capriciously in granting the permits — because it failed to consider public comments — and that its decision to grant the permits violated the Commission's setback rules.

¶ 6     On June 20, 2018, after finding that Petitioners had standing to seek judicial review of the Commission's permit approvals, the district court affirmed the Commission's decision granting the permits.

¶ 7     Because standing is a threshold issue, we address the cross-appeal before addressing Petitioners' appeal.

## II.   Cross-Appeal

¶ 8     The Commission asserts that the district court erred when it held that Petitioners had standing to seek judicial review of the

3

Commission's authorization of Extraction's Form 2A permit applications. We disagree.

A. Preservation, Standard of Review, and Applicable Law

¶ 9 Petitioners contend that the Commission cannot argue for the first time on appeal that they lack standing to seek judicial review of Form 2A permit approvals. Because questions of standing may be raised at any time, we disagree. *See Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7 ("Standing is a jurisdictional prerequisite that can be raised any time during the proceedings.").

¶ 10 Because "standing involves a consideration of whether a plaintiff has asserted a legal basis on which a claim for relief can be predicated, the question of standing must be determined prior to a decision on the merits." *Id.* (citation omitted). In other words, standing concerns a court's subject matter jurisdiction; thus, it is a question we review de novo. *Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cty. Comm'rs*, 80 P.3d 871, 876 (Colo. App. 2003).

¶ 11 Colorado's Administrative Procedure Act (APA) provides judicial review for parties that are "adversely affected or aggrieved"

4

by "[f]inal agency action." § 24-4-106(1)-(2), C.R.S. 2018. To have standing, a party must suffer an injury-in-fact to a legally protected interest; an "interest is legally protected if the constitution, common law, or a statute, rule, or regulation provides the plaintiff with a claim for relief." *Reeves v. City of Fort Collins*, 170 P.3d 850, 851 (Colo. App. 2007). And while the injury-in-fact cannot be overly indirect, incidental, or a remote, future possibility, the injury may be intangible, such as an aesthetic injury. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004).

¶ 12     The Oil and Gas Conservation Act (the Act) provides that "[a]ny rule, regulation, or final order of the commission shall be subject to judicial review in accordance with [the APA]." § 34-60-111, C.R.S. 2018 (citing § 24-4-106). And Commission Rule 305.e.(3) states that if the approval of a Form 2A "is not suspended . . . the issuance of the approved Form 2 or Form 2A by the Director shall be deemed a final decision of the Commission, subject to judicial appeal." Dep't of Nat. Res. Rule 305.e.(3), 2 Code Colo. Regs. 404-1.

## B.    Analysis

¶ 13    The Commission argues that the APA — as a procedural act — and the Act do not grant Petitioners a legally protected interest; therefore, they cannot seek judicial review of the Commission's Form 2A permit authorizations.  The Commission contends that permits are not "final orders" under section 34-60-111, and thus are not subject to the Act's judicial review provision.  In making this argument, it relies on *Colo. Oil & Gas Conservation Comm'n v. Grand Valley Citizens' All.*, 2012 CO 52, ¶ 3 (*GVC*), which held that because permits are separately governed by section 34-60-106(1)(f), C.R.S. 2018, section 34-60-108(2), C.R.S. 2018, which provides that "[n]o rule, regulation, or order . . . shall be made by the commission without a hearing," does not apply to permits; thus, a citizens group was not entitled to request a hearing on a permit-to-drill application.

¶ 14    The Commission argues that because the APA treats permits as "licenses," section 24-4-104, C.R.S. 2018, applies instead, which

6

only contemplates judicial review for permit applicants.[2]

Additionally, the Commission contends that Rule 503.b. has expanded the class of persons who may request a hearing on a Form 2A application to include (1) the permit applicant, (2) the owners of the surface rights, and (3) the local government with land use authority over the proposed development. Dep't of Nat. Res. Rule 503.b., 2 Code Colo. Regs. 404-1. However, the Commission reasons that because citizen groups like Petitioners are not included in the three classes of persons entitled to request a hearing, neither the APA, the Act, nor the Commission rules give Petitioners a legally protected interest to seek judicial review of permit approvals. The Commission's brief ignores Rule 305.e.(3) — designating an approved Form 2A a final Commission decision subject to judicial review — altogether.

---

[2] Section 24-4-104(9), C.R.S. 2018, provides that "[i]f an application for a new license is denied without a hearing, the applicant, within sixty days after the giving of notice of such action, may request a hearing before the agency as provided in section 24-4-105, and the action of the agency after any hearing shall be subject to judicial review as provided in section 24-4-106."

¶ 15     We agree with the Commission that the APA alone does not

provide a substantive claim for relief.[3]  *See Romer v. Bd. of Cty.*

*Comm'rs*, 956 P.2d 566, 576 (Colo. 1998) ("[T]he APA does not

create substantive legal rights on which a claim for relief can be

based.").  However, the Act provides that any "final order of the

commission shall be subject to judicial review in accordance with

section 24-4-106" where the relevant APA provision states that

parties "adversely affected or aggrieved by agency actions" may seek

judicial review.  § 34-60-111 (citing § 24-4-106).  Commission Rule

305.e.(3) likewise recognizes, without limitation, that when the

Commission's Director approves a Form 2A application, his decision

is deemed to be a final Commission decision subject to judicial

---

[3] To the extent that the Commission takes issue with the part of the district court's judgment that held that *Nat'l Wildlife Fed'n v. Cotter Corp.*, 665 P.2d 598 (Colo. 1983), rejected the notion that plaintiffs must have a private right of action to have standing, we agree with the Commission that the APA alone cannot provide plaintiffs with a legally protected interest.  *See Romer v. Bd. of Cty. Comm'rs*, 956 P.2d 566, 576 (Colo. 1998).  But, we need not address this argument further because we affirm the district court's judgment on other grounds.  *See, e.g., Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) (recognizing that we may affirm the trial court's ruling based on any grounds that are supported by the record).

8

review. Because Petitioners established injuries-in-fact to legally protected interests under the APA and section 34-60-111 of the Act, the district court did not err in holding that Petitioners had standing to seek judicial review of the Commission's permit approvals.[4]

¶ 16    To the extent that the Commission relies on Rule 503.b. and *GVC,* both are inapplicable here because Petitioners did not request a hearing. *GVC* held that non-permit applicants may not seek a hearing under section 34-60-108 because the term "order" in that provision does not encompass permits. *GVC,* ¶ 18. This is a separate issue from whether section 34-60-111's judicial review authorization of "final orders" encompasses permits. *GVC* also did not foreclose the possibility that, for APA purposes, a permit can be an order. *See GVC,* ¶ 13.

---

[4] Although it is unclear whether the district court found that all Petitioners established injuries-in-fact to legally protected interests, we affirm because at least one of the Petitioner organizations successfully established an injury-in-fact to a legally protected interest. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264 n.9 (1977) (recognizing that because "at least one individual plaintiff" demonstrated standing, the court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit").

¶ 17    Petitioners are members of organizations that have aesthetic, recreational, health, and environmental interests in the proposed development location, and they offered numerous declarations from members — including nearby residents with children attending Bella Romero — on how the expected air and noise pollution from Extraction's proposed development would negatively impact their interests. Thus, Petitioners established that the Commission's approval of Extraction's Form 2A applications would create an injury-in-fact. *See Ainscough*, 90 P.3d at 856; *Nat'l Wildlife Fed'n v. Cotter Corp.*, 665 P.2d 598, 604 (Colo. 1983) (holding that unlike members of an organization with a mere "interest in a problem" that do not have standing, organization members who face threat of injury have standing because their "alleged injuries are to personal health, and are sufficient to establish that [they] are adversely affected or aggrieved"). This is so especially where Petitioners effectively challenged the Commission's compliance with the governing regulatory framework.[5] S*ee Nat'l Courier Ass'n v. Bd. of*

---

[5] Although Petitioners do not cite Commission Rule 522.a and 522.b(1)(E), that rule could also provide relief. *See* Dep't of Nat.

10

*Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) ("Private parties and reviewing courts alike have a strong interest in fully knowing the basis and circumstances of an agency's decision."); *see also Geer v. Stathopulos*, 135 Colo. 146, 154, 309 P.2d 606, 611 (1957) (recognizing that a court reviewing agency action should have the same information available to the agency to allow the reviewing court to "be in the same position as the agency" in considering "the problem successively confronting agency and court").

¶ 18    The Commission's argument that the Act does not offer Petitioners a legally protected interest — specifically that section 34-60-111, which authorizes judicial review of "final orders," does not encompass permits — is unsupported by Colorado law.  *Cf.* Dep't of Nat. Res. Rule 305.e.(3), 2 Code Colo. Regs. 404-1.  We are not, of course, bound by an agency's interpretation that is contrary to the plain meaning of the governing statute.  *See People v. Rockwell*, 125 P.3d 410, 420 (Colo. 2005).  And, section 34-60-111

Res. Rule 522.a., 522.b.(1)(E), 2 Code Colo. Regs. 404-1 (alleged violation of a Commission regulation is actionable).

authorizes judicial review of final orders "in accordance with" the APA, and the APA defines an agency "order" as "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) by any agency in any matter other than rule-making." § 24-4-102(10), C.R.S. 2018; *see also* Dep't of Nat. Res. Rule 305.e.(3), 2 Code Colo. Regs. 404-1; *Marks v. Gessler*, 2013 COA 115, ¶ 29 ("[T]he APA serves as a gap-filler, and its provisions apply to agency actions unless they conflict with a specific provision of the agency's statute or another statutory provision preempts the provisions of the APA.") (citation omitted) (*cert. granted* June 23, 2014); *Roosevelt Tunnel, LLC v. Norton*, 89 P.3d 427, 430 (Colo. App. 2003) (holding that because the relevant substantive statute "expressly incorporate[ed] the APA procedures," the plaintiff could obtain judicial review of the Colorado Water Quality Control Division's failure to rule on his discharge permit application because the APA defined "action" to include a "failure to act").

¶ 19    Because the Commission's approval of Extraction's Form 2A permit applications allowed Extraction to conduct its operations at

the proposed site, it was a "final order" subject to judicial review under section 34-60-111. *See* Dep't of Nat. Res. Rule 305.e.(3), 2 Code Colo. Regs. 404-1; *see also Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 218-19 (Colo. 1996) (relying on the APA's definition of "order" where the relevant substantive statute did not define the term and the APA defines "orders" to include agency "'decisions' other than rulemaking"); *see also Chittenden v. Colo. Bd. of Soc. Work Exam'rs*, 2012 COA 150, ¶ 26 ("For agency action to be final pursuant to section 24-4-106(2), it must (1) mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an action by which rights or obligations have been determined or from which legal consequences will flow.").

¶ 20    Unlike agency action that is "committed to agency discretion by law" and thus precludes judicial review,[6] the express purpose of

_____

[6] Here, there is a legal standard for us to apply. *See Carter v. Small Bus. Admin.*, 40 Colo. App. 271, 273, 573 P.2d 564, 567 ( 1977) (recognizing that "whether an agency's action is 'committed to agency discretion by law,' depends upon whether some type of legal standard can be found or implied by which to hold the agency accountable" where a "legal standard may be implied from statutory

13

section 34-60-111 is to provide an avenue for "adversely affected or aggrieved" parties to obtain judicial review of final Commission decisions. *See Marks*, ¶ 29 ("[I]f the APA is applicable to a particular agency, both the APA and statutes specific to that agency should be read together and harmonized to the extent possible.") (citation omitted); *Richmond Petroleum, Inc. v. Oil & Gas Conservation Comm'n*, 907 P.2d 732, 734 (Colo. App. 1995) (recognizing that the "purpose" of section 34-60-111 is to provide "claims for judicial review" of "final agency action" according to section 24-4-106 of the APA).

¶ 21    Because the Commission's authorization of Extraction's permits constituted a "final order" under section 34-60-111 and Rule 305.e.(3), and Petitioners demonstrated that approval of the permits would result in an injury-in-fact to their aesthetic, environmental, recreational, and health interests — legitimate interests for purposes of standing — the Act allows Petitioners to challenge the Commission's permit approvals via the APA. *See*

---

language, underlying legislative objectives, and the nature of the action authorized or regulated").

14

*Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) (recognizing that the purpose of the federal APA is to set forth the procedures by which agencies "are accountable to the public and their actions subject to review by the courts"); *Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1228 (10th Cir. 2004) ("Exemption from judicial review of agency decisions is narrow.").

¶ 22    Accordingly, because Petitioners established an injury-in-fact to a legally protected interest, the district court properly held that Petitioners had standing to seek judicial review of the Commission's permit approvals.

### III.    Petitioners' Appeal

¶ 23    Petitioners argue that the district court erred when it found that the Commission did not act arbitrarily and capriciously by failing to (1) consider public comments, and (2) comply with its own setback rules.  We disagree.

### A.    Additional Background

¶ 24    The Commission is charged with regulating oil and gas resource production in Colorado.  *See* § 34-60-105, C.R.S. 2018. Specifically, the Act authorizes the Commission to regulate "[t]he drilling, producing, and plugging of wells and all other operations

15

for the production of oil and gas." § 34-60-106(2)(a). And the General Assembly has declared that it is in the public interest to "[f]oster the responsible, balanced development, production, and utilization of the natural resources of oil and gas in the state of Colorado in a manner consistent with protection of public health, safety, and welfare, including protection of the environment and wildlife resources." § 34-60-102(1)(a)(I), C.R.S. 2018.

¶ 25    Following an amendment to the Act, the Commission amended its rules, including Rule 305, *see* Dep't of Nat. Res. Rule 305, 2 Code Colo. Regs. 404-1, to allow for public comment on permit applications to ensure that permitting decisions "are better informed and more protective of public health, safety, and welfare, including the environment and wildlife resources." Oil & Gas Conservation Comm'n, *Statement of Basis, Specific Authority, and Purpose*, 2 Code Colo. Regs. 404-1 (superseded May 30, 2011).[7]

¶ 26    The Commission's purpose statement — discussing Rule 305's amendment — stated,

---

[7] The Commission's purpose statement explains its amendments to the old rule.

16

Amended Rule 305 significantly enhances the transparency of the permitting process by providing that the entire Form 2A will be posted on the [Commission's] web-site, by extending individualized notice to the CDPHE, CDOW, surface owners, and the owners of surface property within 500 feet of the location, and by providing at least a 20 day period for receipt and consideration public comment.

*Id.* The Commission also stated that it

will accept and post any comments it receives on the Form 2A or any associated Form 2. Although [the Commission] will consider such comments, it does not anticipate responding to them.

*Id.*

¶ 27    Also relevant to this appeal, in 2013, the Commission promulgated "setback" rules, *see* Dep't of Nat. Res. Rule 604, 2 Code Colo. Regs. 404-1, concerning siting requirements for oil and gas facilities.  The express purpose of the setback rules was to

provide strong protective measures, including notice and communication requirements, without imposing undue costs or restrictions on oil and gas exploration and production activities in the state.

The Setback Rules are intended to require Operators to eliminate, minimize, or mitigate the impacts of oil and gas operations conducted in Designated Setback Locations by

17

> utilizing technically feasible and economically practicable protective measures.
>
> . . . .
>
> These Setback Rules are not intended to address potential human health impacts associated with air emissions related to oil and gas development.

*See* Oil & Gas Conservation Comm'n, *Statement of Basis, Specific Authority, and Purpose*, 2 Code Colo. Regs. 404-1 (superseded February 11, 2013).

¶ 28    The Commission defined "designated setback location" as "a term of art for all proposed Oil and Gas Locations located within, or proposed to be located in, any Buffer Zone Setback, an Exception Zone, within [1000 feet] of a High Occupancy Building Unit, or within 350' of a Designated Outside Activity Area." *Id.*

¶ 29    After receiving public comments on Extraction's two Form 2A applications, the Commission requested additional information from Extraction, which revised several of its best management practices (BMPs) to respond to the issues the Commission identified.

¶ 30    Extraction provided a siting rationale explanation to the Commission and discussed its compliance with the setback regulations:

18

> The facility for the Vetting 15-H well pad has
> been positioned to meet [the Commission]
> setbacks from both Building Units and High
> Occupancy Building Units. The facility is
> located over 1,300 feet from the closest high
> occupancy building unit and over 700' from
> the two closest building units. Additionally the
> facility has been located to achieve the greatest
> setback possible from the limits of the school
> property located to the northwest, yet as far as
> possible from the residential homes located to
> the south and east.

Extraction's siting rationale also discussed the alternative locations it considered:

> The Vetting location is the alternate location to
> previously permitted locations, the South
> Greeley Directional and Gilbert pads. The
> Vetting Location was chosen as the best site
> available because we are able to utilize more of
> our preferred [BMPs], many of which are
> mutually beneficial for the community and for
> Extraction[.]

B. Preservation, Standard of Review, and Applicable Law

¶ 31 The parties agree that Petitioners preserved both issues for appeal.

¶ 32 We review a district court's decision under the APA and whether the record contains sufficient evidence to support the agency's decision de novo. *Farmer v. Colo. Parks & Wildlife Comm'n*, 2016 COA 120, ¶ 12; *Chase v. Colo. Oil & Gas Conservation*

19

*Comm'n*, 2012 COA 94, ¶ 21.  Accordingly, we "sit in the same position as the district court and review the agency's decision for abuse of discretion."  *Farmer*, ¶ 12.

¶ 33     In reviewing an agency's decision, we view the record in the light most favorable to the agency, and we defer to the agency's factual findings unless they are unsupported by the record or fail to abide by the statutory scheme.  *Id.* at ¶ 13; *Chase*, ¶ 21. Additionally, we defer to an agency decision that involves "factual and evidentiary matters within an agency's specialized or technical expertise."  *Rags Over the Ark. River, Inc. v. Colo. Parks & Wildlife Bd.*, 2015 COA 11M, ¶ 55.  Thus, if conflicting inferences can be drawn from the record evidence, we will not second guess an agency's choice between two opposing views.  *Colo. Motor Vehicle Dealer Licensing Bd. v. Northglenn Dodge, Inc.*, 972 P.2d 707, 715 (Colo. App. 1998).

¶ 34     The Commission is a creature of state statute and has only the powers conferred on it by the Act.  *Chase*, ¶ 26.  The Act grants the Commission broad jurisdiction and empowers it to "make and enforce rules, regulations, and orders" and "do whatever may

reasonably be necessary to carry out the provisions" of the Act. §
34-60-105(1). After enacting regulations, an agency is bound by
them. *Rags Over the Ark. River, Inc.*, ¶ 25.

¶ 35    We overturn an administrative agency's determination only if
we conclude that the agency "abused its discretion or when the
decision was arbitrary and capricious, based on findings of fact that
were clearly erroneous, unsupported by substantial evidence, or
otherwise contrary to law." *Farmer*, ¶ 13. An agency acts
arbitrarily and capriciously when it fails to comply with its own
regulations. *Rags Over the Ark. River, Inc.*, ¶ 26. We afford an
agency's interpretation of its own rules great deference and accept
the interpretation "if it has a reasonable basis in law and is
warranted by the record, but not if the rule clearly compels the
contrary result." *Chase*, ¶ 23.

¶ 36    When construing an agency's regulation, we follow principles
of statutory interpretation by looking first to the rule's language to
analyze the words and phrases according to their plain and
ordinary meaning. *Id.* at ¶ 22. "This is consistent with
[Commission] Rule 100, which states that all words not otherwise

21

defined but used in [the Commission] rules 'shall be given their usual customary and accepted meaning, and all words of a technical nature, or peculiar to the oil and gas industry, shall be given that meaning which is generally accepted in said oil and gas industry.'" *Id.*

## C. Analysis

### 1. Public Comments

¶ 37 Petitioners argue that the district court erred when it held that the Commission was not required to respond to substantive public comments. They contend that the Commission was obligated to respond to substantive public comments because it must make a record of its decision-making process to show that it considered public comments, as required by its rules. *See* Dep't of Nat. Res. Rule 305.b.(1)(B), 2 Code Colo. Regs. 404-1 (setting Form 2A deadlines "by which public comments must be received to be considered"); *see also Chase*, ¶ 59 (reversing the Commission's decision because the court lacked "sufficiently detailed findings of facts, including assessments of the evidence and testimony, and conclusions of law . . . to allow meaningful review on appeal").

22

¶ 38    Petitioners further contend that the Commission failed to adequately address public concerns regarding (1) health threats to the Bella Romero students, (2) the need for an emergency response plan to protect students and faculty, and (3) the need to consider alternative locations; thus, the Commission failed to make a sufficient record showing consideration of these site-specific public concerns.

¶ 39    We agree that the Commission is required to document its decision-making process but conclude that here the Commission fulfilled its obligations to document its consideration of public comments.

¶ 40    The administrative record reflects that the Commission considered and responded to public concerns regarding (1) Bella Romero students' health, (2) Extraction's emergency response plan, and (3) alternative siting.

¶ 41    First, the Commission's "Memo to File" discussed public comments regarding Bella Romero students' health and the measures taken by Extraction to protect public health and safety. Specifically, the Commission "prescribed Condition[s] of Approval

23

(COAs) to eliminate, minimize or mitigate potential adverse impacts to public health, safety, and welfare, including the environment, that were not otherwise addressed by [Commission] Rules or operator proposed [BMPs]." The Commission also noted that the location complied with the agency's setback rules as the "nearest production facility on the Vetting Facility location will be [1364] feet from the Bella Romero School building," and thus the facilities' location did not require a hearing. *See* Dep't of Nat. Res. Rule 604.a.(3), 2 Code Colo. Regs. 404-1 (stating that no production facility "shall be located one thousand [1000] feet or less from a High Occupancy Building Unit without Commission approval following Application and Hearing"). The Commission acknowledged that the public was concerned that the school's playground and sporting fields were less than 1000 feet from the proposed development, but it explained that its setback rules "do not address a setback to the property boundary or playground associated with High Occupancy Building Units, only the building itself."

¶ 42    Second, regarding an emergency response plan, the Commission requested further information from Extraction on how it proposed to ensure "the safety and welfare of the students and faculty of the Bella Romero school during an emergency." In response, Extraction discussed how it would continue to work with the Greeley Fire Department "to add training, tours, drills, inspection or other components" benefiting the students' safety in the event of an emergency. The Commission aptly noted — and Petitioners could not contradict — that it was not the appropriate agency to carry out these emergency measures.

¶ 43    Third, the Commission requested further information from Extraction on "alternative locations further away . . . and why those other locations were not chosen." In response, Extraction discussed the alternative "previously permitted locations" that it considered — the South Greeley Directional and Gilbert pads — but Extraction ultimately decided the requested location was "the best site available because we are able to utilize more of our preferred [BMPs], many of which are mutually beneficial for the community and for Extraction." Specifically, the Vetting location allowed

25

Extraction to reduce noise and traffic pollution as compared to the other considered locations because the Vetting location allowed for (1) easy access to Highway 34, allowing truck traffic to avoid driving by Bella Romero; (2) closer proximity to irrigation ditches, eliminating the need for water trucks to drive to the Vetting location; (3) closer proximity to existing electric infrastructure, eliminating noise that would result if combustion generators were used; and (4) closer proximity to existing oil and gas pipeline infrastructure, allowing Extraction to move the oil by pipeline instead of relying upon trucks.

¶ 44    Additionally, Extraction altered several of its BMPs because of Commission concerns and requests for more detailed information following public comments.  For example, the Commission asked Extraction if it would commit to using remote shut-off capabilities of the production facilities to protect the health and safety of nearby residents in case of an emergency.  Extraction added a BMP to its operational system "to allow remote shut in, remote monitoring, and off-site response to emergencies."  Several of the approved BMPs were in direct response to Petitioners' requests.  For example, in

26

Sierra Club's comments on the Form 2A applications, it stated that the facilities should be subjected to an instrument-based leak detection and repair inspection at least once a year and use volatile organic compound (VOC) destruction with at least 95% efficiency on all tanks capable of emitting over two tons of VOCs annually. The Commission's file memorandum noted that Extraction's BMPs included "conducting regularly scheduled inspections of equipment to identify liquid leaks, using a low VOC level base fluid for their oil-based mud drilling fluid . . . and using Emission Control Devices and Vapor Recovery Units capable of reducing VOC emissions by at least 95%."

¶ 45 To the extent that Petitioners argue that the Commission's decision runs counter to the evidence because the Commission failed to provide a written response to studies submitted by Petitioners, the agency implicitly considered and rejected those studies as irrelevant to the permits at issue. *See Northglenn Dodge, Inc.*, 972 P.2d at 716 ("The absence of [specific] findings by an administrative board is not fatal to a decision if there is evidence in the record which supports its decision" where an agency's "express

27

findings, taken together with reasonable implications based upon its assessment of the totality of the evidence presented" provide sufficient basis for the decision.) (citation omitted); *Hudspeth v. Bd. of Cty. Comm'rs*, 667 P.2d 775, 778 (Colo. App. 1983) ("The absence of express findings by [an agency] does not affect the validity of the decision where the necessary findings are implicit in the action taken."). The record discloses that several of the referenced studies related to locations outside of Weld County; indeed, some studies discussed impacts from out-of-state oil and gas development. Additionally, Petitioners' less recent submitted studies could have less relevance to the Commission's 2017 permit approvals.

¶ 46    While Petitioners may believe that the Commission wrongly concluded that Extraction took sufficient mitigation measures to protect public health and safety, we may not substitute our judgment for the Commission's. *See Rags Over the Ark. River, Inc.*, ¶ 55; *Chase*, ¶ 21. Because the record evidences the Commission's consideration of public comments on site-specific concerns, as required by Rule 305, we cannot conclude that the district court

erred in concluding that the Commission did not act arbitrarily and capriciously in authorizing the Form 2A permits. *See Farmer*, ¶ 13.

### 2. Setback

¶ 47  Petitioners next argue that the district court erred when it found that the Commission complied with its own setback rules. *See* Dep't of Nat. Res. Rule 604.c.(2)(E)(i), 2 Code Colo. Regs. 404-1 ("Multi-well production facilities shall be located as far as possible from Building Units."). Petitioners contend that Rule 604.c.(2)(E)(i) — as previously interpreted by the Commission — requires an alternative site analysis, and thus the Commission acted arbitrarily and capriciously by not requiring Extraction to conduct an alternative site analysis before granting the permits. Petitioners also contend that Commission Rule 305A supports this argument because it requires that a Large Urban Mitigation Area (LUMA) facility's siting rationale include "a description of other sites considered and the reasons such alternate sites were rejected." Dep't of Nat. Res. Rule 305A.b.(2), 2 Code Colo. Regs. 404-1.

¶ 48  Petitioners cite no previous Commission decision or rulemaking statement to support their argument that the

29

Commission has previously interpreted Rule 604.c.(2)(E)(i) as requiring an alternative site analysis. Rather, Petitioners rely on Form 2A to support their argument. Form 2A states that if permit applicants' proposed production facilities are to be located less than 1000 feet from a building unit, Rule 604.c.(2)(E)(i) requires that "the operator must evaluate alternative locations for Production Facilities that are farther from the Building Unit."

¶ 49    But Form 2A also states that in conducting this "alternative location" evaluation, the applicant must "certify that no alternative placements for the Production Facilities, farther from the nearest Building Unit, were available based on the analysis conducted pursuant to Rule 604.c.(2)(E)(i)." Thus, Form 2A clarifies the meaning of "alternative locations" to require only an analysis of whether "alternative placements" exist *within* the proposed location. *See* Oil & Gas Conservation Comm'n, *Statement of Basis, Specific Authority, and Purpose,* 2 Code Colo. Regs. 404-1 (superseded February 11, 2013) (stating that Rule 604.c.(2)(E)(i) is intended to require permit applicants "to eliminate, minimize, or mitigate the impacts of oil and gas operations *conducted in* Designated Setback

30

Locations") (emphasis added). Rule 604.c.(2)(E)(i)'s plain language also supports this interpretation, as it requires sites to be located "as far as possible" from a building unit. In contrast, Rule 305A requires "a description of other sites considered and the reasons such alternate sites were rejected." *See Chase*, ¶ 22. The record shows that locating the permitted facilities farther from the school would only place the facilities closer to residences or to land the City of Greeley had designated for other use.

¶ 50 And we disagree with Petitioners that the district court erred when it found that Rule 305A was inapplicable here and that it did not support Petitioners' argument that an alternative site analysis was required. As Petitioners acknowledge in their opening brief, Rule 305A serves a distinct purpose from Rule 604 and contains separate requirements. Rule 305A serves to ensure adequate local government notification and consultation for LUMA facilities. *See* Dep't of Nat. Res. Rule 305A, 2 Code Colo. Regs. 404-1. The subject site is not a LUMA, and Extraction previously reached an

agreement with the City of Greeley regarding the facilities' location. Rule 305A's requirements were simply inapplicable here.[8]

¶ 51    We also reject Petitioners' contention that the district court erred by relying on a prior district court decision — *Neighbors Affected by Triple Creek v. Colo. Oil & Gas Conservation Comm'n,* (Dist. Ct. No. 16CV34274, Aug. 23, 2017) (unpublished order) (*Triple Creek*) — in holding that Rule 604.c.(2)(E)(i) does not require an alternative site analysis. Petitioners reason that because *Triple Creek* involved a LUMA site, whereas Extraction's permit applications did not, the court erred in relying on *Triple Creek*.

¶ 52    The district court only relied on relevant portions of *Triple Creek*. *Triple Creek* involved a similar analysis where the court rejected the plaintiff's argument that Rule 604 required an alternative site analysis to ensure that the production facility was

---

[8] Even though Extraction was not required to justify why the Vetting location was selected over the South Greeley Directional and Gilbert pad sites, the record reveals that Extraction considered, but ultimately rejected, two other sites, in part because of (1) better highway access to allow Extraction's trucks to get off local roads faster and potentially avoid local roads altogether; (2) closer proximity to electric infrastructure to avoid using combustion generators to power the drilling rig; and (3) technical concerns with accessing the mineral reserves at the other two sites.

sited "as far as possible" from building units.  *See Triple Creek*, No. 16CV34274, slip op. at 4 ("The requirements of Rule 305 specifically relate to the location of the entire site, whereas Rule 604 relates to the siting of the production facilities once the site has already been chosen.  This is supported by the language of Form 2A and the language of the Rules.").  Additionally, Petitioners cannot simultaneously argue that Rule 305A — governing LUMA facilities — applies here and supports their argument that Rule 604.c.(2)(E)(i) requires an alternative site analysis, while also arguing that the court erred in relying on *Triple Creek* because it involved a Rule 305A analysis.  *See Erskine v. Beim*, 197 P.3d 225, 229 (Colo. App. 2008) (recognizing that parties are required to maintain consistent positions throughout litigation to assure the promotion of truth and prevent parties from "deliberately shifting positions to suit the exigencies of the moment") (citation omitted).  Even assuming that the district court erred in relying on *Triple Creek*, we need not address this argument further because, as explained here, we affirm the court's judgment on other grounds.  *See, e.g.*, *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App.

33

2004) (recognizing that we may affirm the trial court's ruling based on any grounds that are supported by the record).

¶ 53 Given that (1) the agency's proffered interpretation is reasonable in light of the Form 2A language and requirements of Rule 604.c.(2)(E)(i), and (2) Petitioners failed to identify an instance where the Commission previously interpreted Rule 604.c.(2)(E)(i) as requiring an alternative site analysis, we cannot conclude that the agency failed to comply with its own regulations in authorizing Extraction's Form 2A permits without requiring Extraction to conduct an alternative site analysis. *See Chase*, ¶¶ 22-23.

¶ 54 Accordingly, we affirm the district court's judgment that the Commission did not act arbitrarily and capriciously in authorizing the Form 2A permits. *See Farmer*, ¶ 13.

IV. Conclusion

¶ 55 The judgment is affirmed.

JUDGE FREYRE and JUDGE WELLING concur.