23CA2207 Estate of Nathan 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2207
El Paso County District Court No. 21PR30605
Honorable Vincent N. Rahaman, Magistrate

In re the Estate of James Oliver Nathan, Sr., deceased.

5633 Gunshot Pass Drive, LLC, Tri State Mortgage, LLC, Real Advantage Title Insurance Company, and Equity Title of Colorado,

Appellants,

v.

Kevin Nathan, Personal Representative,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

City Park Law Group, LLC, Wayne E. Vaden, Sydney C. Merrell, Denver, Colorado, for Appellants

Wade Ash, LLC, Norvell E. Brasch, Samuel O. Kesten, Greenwood Village, Colorado, for Appellee

¶ 1     In this probate action, 5633 Gunshot Pass Drive, LLC; Tri-State Mortgage, LLC; Real Advantage Title Insurance Company; and Equity Title of Colorado (collectively, the Lender Parties), appeal a magistrate order that invalidated a beneficiary deed and purported to extinguish their ownership interests in the subject property.  We reverse the order and remand the case for further proceedings.

## I.     Background

### A.     The Property

¶ 2     James Oliver Nathan, Sr. (decedent), died intestate on January 27, 2021, survived by five children.  One of his children was appointed as the personal representative (PR) of his estate and opened informal, unsupervised intestacy proceedings.

¶ 3     During decedent's life, he left his primary residence, a home located at 5633 Gunshot Pass Drive in Colorado Springs (the property), to one of his children, Lina Nathan (Lina), via a beneficiary deed.  Thus, on his death, title to the property transferred to Lina.  *See* §§ 15-15-401 to -402, C.R.S. 2024.

¶ 4     About a year after decedent's death, Lina and a third party obtained a $180,000 loan from Tri-State Mortgage (the mortgage company), secured by the property.  In May 2022, after defaulting

on the loan, Lina quitclaimed her interest in the property to the mortgage company in lieu of foreclosure. Shortly thereafter, the mortgage company transferred ownership of the property to 5633 Gunshot Pass Drive, LLC (the LLC) by quitclaim deed (recorded on June 27, 2022), and the LLC then evicted Lina from the property.

## B. The Probate Proceedings

¶ 5 Meanwhile, in late 2021 and early 2022, James Nathan, Jr. (James Jr.), one of decedent's children, filed a series of pro se motions "to contest [decedent's] estate." These motions sought information about the property and the decedent's other assets.

¶ 6 In April 2022, the magistrate held a hearing on the motions. The transcript of the hearing is not in the record. But after the hearing, which Lina did not attend, the magistrate ordered her to appear in court pursuant to section 15-12-723, C.R.S. 2024. That provision authorizes the court to order the deposition of "any person" who is "suspected to have concealed, embezzled, carried away, or disposed of any money, goods, or chattels of the deceased." § 15-12-723.

¶ 7 Lina appeared at the scheduled deposition in June but failed to produce subpoenaed documents. The magistrate ordered her to

2

produce the documents by the end of July. Lina did not produce the documents.

¶ 8     By July, though, James Jr. had traced ownership of the property, and he informed the magistrate of the various transactions among Lina, the mortgage company, and the LLC. In his own filing, the PR confirmed to the court that "a Wyoming LLC . . . apparently owns the property." The PR sought the court's "guidance as to the appropriate next steps."

¶ 9     In response, the magistrate entered two orders. First, he ordered Lina to appear in court on September 27, 2022. When Lina failed to appear, the magistrate issued a warrant for her arrest. Second, he ordered the PR to file a notice of lis pendens concerning the property "in this action" and in the eviction case brought by the LLC against Lina several months earlier, and to "notify [the mortgage company] or any known affiliate" that the lis pendens had been filed and recorded.

¶ 10     In late October, the PR reported that he had filed and recorded the lis pendens as ordered and that his counsel had "communicated extensively with Equity Title, the title insurer for [the mortgage company]." Based on information from the title company, the PR

opined that the mortgage company "intend[ed] to treat this as an insurance claim rather than engage" with counsel "in resolving ownership issues."

¶ 11 In the same report, the PR requested the following relief: a "default judgment" against Lina, invalidation of the beneficiary deed, assignment of "any interest [Lina] holds in the [property] to the Estate," and forfeiture of Lina's rights as an heir.

¶ 12 The magistrate, noting no responses to the request, granted it and entered an order invalidating the beneficiary deed and assigning "any/all of [Lina's] interests in the [property] to th[e] estate" (November Order).

¶ 13 Despite the magistrate's instructions for the PR to "contact" the mortgage company, the Lender Parties were not joined as parties to the proceeding before the November Order. Nonetheless, the Lender Parties filed a joint C.R.C.P. 60 motion, primarily seeking confirmation that the November Order did not retroactively affect the LLC's ownership of the property. The motion requested that the court release the notice of lis pendens.

¶ 14 After a hearing in March 2023, the magistrate added the Lender Parties as parties in the probate action. But because the

4

November Order was a final order, the magistrate concluded that he lacked authority to rule on the C.R.C.P. 60 motion. *See, e.g., In re Marriage of Matheny*, 2024 COA 81, ¶ 19 (explaining that magistrates lack authority to reconsider final orders or resolve a C.R.C.P. 60(b) motion).

¶ 15    The Lender Parties now appeal under C.R.M. 7(b).

## II.    Analysis

¶ 16    The Lender Parties contend that the magistrate erred by invalidating the beneficiary deed, and thereby extinguishing their property rights, without joining them as parties to the action. We agree.

### A.    Standing

¶ 17    As a threshold matter, the PR argues that the Lender Parties lack standing to challenge the November Order. We review de novo whether a party has standing. *Ferguson v. Spaulding Rehab., LLC*, 2019 COA 93, ¶ 7.

¶ 18    The relevant question, when the appellant was not a party to the proceedings below, is whether the trial court's decision "impose[d] a 'substantial grievance' on that non-party." *Arapahoe Cnty. Dep't of Hum. Servs. v. People in Interest of D.Z.B.*, 2019 CO 4,

5

¶ 8 (citation omitted). A substantial grievance includes the denial of a claim of right or the imposition of a substantial burden or obligation. *Id.* When a trial court's decision imposes a substantial grievance on one party sufficient to give it standing, the court need not determine the standing of all appealing parties. *See Weld Air & Water v. Colo. Oil & Gas Conservation Comm'n*, 2019 COA 86, ¶ 15 n.4. The Lender Parties were not added as parties to the proceedings before the entry of the November Order, so we must assess whether the November Order imposed a substantial grievance on them sufficient to give them standing to appeal it.

¶ 19 We conclude that, at a minimum, the LLC has standing. The LLC acquired its interest in the property from the mortgage company (who obtained its interest from Lina) on June 23, 2022; thus, as of the date of the November Order, the LLC owned the property. The November Order purports to invalidate the beneficiary deed that transferred title from decedent to Lina, which, by extension, would affect the LLC's title.

¶ 20 Because the invalidation of the deed purports to extinguish the LLC's ownership interest in the property, we conclude that the

LLC is substantially aggrieved by the November Order. Therefore, it has standing to pursue this appeal.

¶ 21 The remaining Lender Parties may also have standing, but the record is unclear in that regard. The magistrate ordered that the Lender Parties be added as parties to the proceeding following a hearing in March 2023. The transcript of that hearing is not in the record, and the magistrate's post-hearing order does not provide the basis on which the Lender Parties were added. The magistrate made no specific findings as to whether the Lender Parties have standing or their legal relationship to each other or to the property. Therefore, we cannot determine if any of the remaining Lender Parties has standing. Regardless, because the LLC has standing, we may resolve the issue on appeal. *See id.*

### B. November Order

¶ 22 The question is whether the magistrate properly entered the November Order invalidating the beneficiary deed. After reviewing the possible grounds for the November Order, we conclude that he did not.

¶ 23 The PR says that the magistrate had authority to enter "default judgment" and thereby invalidate the beneficiary deed, as a

discovery sanction against Lina. There are several problems with this position.

¶ 24    First, we are unsure how a "default judgment" against Lina could enter in this case. An entry of default judgment establishes a party's liability and deems the allegations in the plaintiff's complaint admitted. *See Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M, ¶ 22. But here, no petition seeking to invalidate the deed was ever filed against Lina.[1] The record does not show what filing triggered the April 2022 hearing at which the magistrate ordered Lina to submit to a deposition or why the magistrate took such action. James Jr.'s pro se motions filed before that hearing did not include specific allegations establishing Lina's liability under any statute or the common law or request a judgment against her.

¶ 25    Second, even if a default judgment could somehow be entered against Lina as a sanction in this case, the magistrate failed to

---

[1] The PR may have been seeking to invalidate the beneficiary deed based on Lina's potential breach of a confidential relationship with or undue influence over the decedent. *See, e.g.*, *Krueger v. Ary*, 205 P.3d 1150, 1154-55 (Colo. 2009) (explaining that a party may seek to void a conveyance based on a grantee's undue influence over a grantor). But the sparse record does not confirm that such a claim was raised or reveal any associated facts. However, the PR may pursue that claim on remand if appropriate.

comply with C.R.C.P. 37. To impose default judgment as a discovery sanction under C.R.C.P. 37, a court must make a specific finding of willfulness or deliberate disobedience of discovery rules, bad faith conduct amounting to a flagrant disregard or dereliction of discovery obligations, or culpable conduct that is more than mere inadvertence or simple negligence but is gross negligence. *Nagy v. Dist. Ct.*, 762 P.2d 158, 161 (Colo. 1988). The magistrate did not make any findings in its November Order concerning Lina's conduct. Rather, the magistrate appears to have entered a default judgment invalidating the beneficiary deed only because "no responses were filed to the [PR's] report and request." The November Order neither cites C.R.C.P. 37 nor indicates that the court was entering a default judgment as a discovery sanction.

¶ 26    Third, and most importantly, the magistrate did not have authority to impose a sanction that extinguished the property rights of parties not before the court. *See In re Estate of Foiles*, 2014 COA 104, ¶ 22 (court cannot void a transaction that "affect[s] the rights of persons or entities that were not parties to the litigation"); *In re Estate of Masden*, 24 P.3d 634, 636 (Colo. App. 2001) (probate court could not resolve a property dispute where more than eighty

affected property owners were not before the court); *see also Brody v. Bock*, 897 P.2d 769, 778 (Colo. 1995) ("If the interests of the parties before the court may be finally adjudicated without adversely affecting the rights of an absent person, the absent party need not be joined."); C.R.C.P. 19(a) (a person subject to service shall be joined as party if he claims an interest relating to the subject of the action and his absence would impair his ability to protect that interest).  The record shows that by September 2022, the court and the parties were on notice that the LLC appeared to own the property and that it had evicted Lina.  Nonetheless, without explaining its authority to do so, the magistrate invalidated the beneficiary deed.

¶ 27     The PR argues that the magistrate could enter a default judgment and invalidate the deed without joining the LLC as a party because the mortgage company had actual or constructive notice of the probate proceedings and chose not to intervene until after entry of the November Order.

¶ 28     Contrary to the PR's argument, and even assuming that notice to the mortgage company would have sufficed, the record does not establish that he provided adequate notice of the probate case to

"an agent for [the mortgage company]." Instead, as the PR's brief acknowledges, the PR's counsel had communications with a representative of a title company, not with a representative of the mortgage company.

¶ 29    Nor would the notices of lis pendens, filed in estate and eviction cases and recorded with the county, necessarily have provided notice of the probate proceedings. A notice of lis pendens gives notice to those who "acquire an interest in the property *during the pendency of the litigation*" — in other words, to those with an interest acquired *after* the filing of the notice of lis pendens. *Thomas v. Lynx United Grp., LLC*, 159 P.3d 789, 793 (Colo. App. 2006) (emphasis added). But the LLC acquired its ownership interest *before* the notice of lis pendens was filed in either case or recorded.[2]

¶ 30    More to the point, the magistrate never made any findings that the LLC (or any of the other Lender Parties) had notice of the

_____

[2] We note as well that by the time the PR filed the notice of lis pendens in the eviction case, El Paso County Case No. 2022C37900, the writ of restitution had issued and the case had been closed for more than two months. *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (appellate courts can take judicial notice of court records in related proceedings).

proceedings, much less notice that the court might attempt to extinguish their property rights.  On this record, we are certainly not in a position to determine which parties had notice and when they may have received it.

### III.  Disposition

¶ 31     The November Order is reversed, and the case is remanded for further proceedings in which the magistrate or the district court is directed to join all required parties.[3]

JUDGE YUN and JUDGE KUHN concur.

---

[3] In light of our disposition, we decline to address the Lender Parties' timeliness argument under section 15-15-407(3), C.R.S. 2024.  That argument, which was not raised in the trial court, can be asserted on remand.